# CHARLESTON.

Savage *et al. v.* People's Building, Loan & Savings Ass'n.

Submitted June 15, 1898—Decided November 23, 1898.

1. Building and Loan Ass'n—*Foreign Building and Loan Ass'n—Attorney of Record.*

   A building and loan association chartered by the state of New York, which has complied with our statute by appointing an attorney in this State to accept service for it, does not thereby become a domestic corporation. (p. 278).

2. Corporations—*Foreign Corporation—Domestic Corporation—Attachment.*

   A statute merely enabling a foreign corporation to hold property or do business in this State does not make it a domestic corporation, and it may be proceeded against by attachment as a foreign corporation. (p. 278).

3. Right of Action—*Corporations – Stock Certificates—Jurisdiction.*

   A provision in one of the conditions indorsed on the certificates of stock issued by such corporation that any action brought against the association by the shareholders shall be brought in the county of Ontario, N. Y., is a void requirement, as jurisdiction cannot be taken away by consent. (p. 282).

4. Corporations—*By-Laws—Validity of By-Laws—Vested Rights.*

   A corporation has not the power, by laws of its own enactment, to disturb or devest rights which it has created, or to impair the obligation of its contracts, or to change its responsibility to its members, or to draw them into new and distinct relations; and all by-laws attempting to do this are inoperative and void. (p. 280).

5. Building and Loan Ass'n—*Stock Certificates—Withdrawal—Contracts.*

   Where a certificate of stock on its face provides that the holder may withdraw the amount paid on the same to a building and

loan association, at any time within three years from its date, together with six per cent. interest, all of which are payable in the manner set forth in the articles of association and by-laws, and terms and conditions printed on the back of certificate,—the fourth of which conditions provides that "the payment on this certificate cannot be withdrawn until after three years from the date of this certificate; if withdrawn between that date and maturity, the holder shall be entitled to receive sixty dollars for each of said shares, together with six per cent. per annum,"— said condition and the by-laws of said association existing at the date of said certificate are a part of the contract, and the manner and time of withdrawal and payment cannot be changed by a subsequent by-law.   (p. 280).

Appeal from Circuit Court, Wood county.

Bill by Thomas S. and E. J. Savage against the People's Building, Loan and Savings Association. Decree for plaintiffs, and defendant appeals.

*Affirmed.*

J. W. VANDERVORT and CHESTER M. ELLIOTT, for appellant.

VAN WINKLE & AMBLER and MOATS & PETERKIN, for appellees.

ENGLISH, JUDGE:

Thomas S. Savage and E. J. Savage, administrators of the estate of George Savage, deceased, brought a suit in equity in the Circuit Court of Wood County, against the People's Building, Loan & Savings Association, a corporation organized and existing under the laws of the state of New York, to recover from the defendant the sum of eight hundred and forty dollars, with interest thereon from the 10th day of August, 1892, claimed to be due the plaintiffs, as the withdrawal value of fourteen shares of paid-up stock in the defendant company. An attachment was sued out against the defendant, and levied on its real estate situated in said county. The sole ground upon which the order of attachment was based was that the defendant was a foreign corporation. The defense interposed with a plea in abatement of the suit, a plea in abatement to the attachment, and a demurrer and answer to the bill. Depositions were taken by plaintiffs and defend-

ant. Objections were sustained to the pleas in abatement.
The demurrer to the bill was overruled. A decree was
rendered against the defendant for one thousand one hun-
dred and five dollars and eighty-six cents. The attach-
ment was sustained, and the real estate levied on was
directed to be sold to satisfy said debt, upon the terms
prescribed in said decree. The defendant then moved
the court to modify the decree so that interest should be
calculated on the eight hundred and forty dollars only
from the date said shares of stock in controversy were
presented to defendant association for withdrawal, to-wit,
September 9, 1895, which motion was overruled. The
defendant also moved the court to require plaintiffs and
the special commissioners appointed to enforce said de-
cree to do so in such manner that plaintiffs should only
participate equally with the other stockholders who filed
withdrawals of their shares with said association at the
same time or before plaintiffs filed withdrawals of their
shares, in order that all stockholders might be placed in
the same position, and the withdrawing shareholders
might all have equal standing, which motion was over-
ruled, and the defendant obtained this appeal.

The first error assigned and relied on by the defendant
is that the court erred in failing and refusing to dismiss
the plaintiffs' bill upon the plea in abatement to said suit.
This plea, in substance claims that the plaintiffs did not at
the time of the institution of said suit have a right to in-
stitute it in the State of West Virginia, because, as fully
shown in the bill, if any such suit or action existed at the
time the same was instituted, it should have been brought
in the county of Ontario and state of New York; that it is
a corportion of the state of New York, and has fully com-
plied with the laws of West Virginia governing foreign
corporations doing business in this State, has caused an
attorney in fact to be appointed, as required by statutes of
West Virginia, and the plaintiffs could not obtain jurisdic-
tion by attachment of defendant's property in this State;
that defendant is a solvent corporation, and no ground for
said attachment existed. This question was passed upon
by this Court in the case of *Quesenberry* v. *Association*
(recently decided, and not yet officially reported) 30 S. E.

73, in which it was held: "(1) A suit against a foreign corporation may be brought in any county wherein it has estate or debts due it. It is a nonresident, under clause 3, s. 1, c. 123, Code 1891. (2) The appointment by a foreign corporation of an attorney in this State to accept service of process does not make it a domestic corporation. (3) A statute merely enabling a foreign corporation to hold property or do business in this State does not make it a domestic corporation." BRANNON, PRESIDENT, in delivering the opinion of the court used the following language: "Another point is made that, as this foreign corporation had appointed an agent to accept service of process, it is not liable to attachment. It is a foreign corporation, and is a nonresident, and the fact that it owns property here no more converts it into a resident than it converts a natural person into a resident. It dwells—has its habitat or domicile—in New York, where it was chartered;" citing *Humphreys* v. *Newport News & M. V. Co.*, 33 W. Va., 137, (10 S. E. 39).

It is insisted by counsel for the appellant in his brief that this suit abated by reason of the fact that the summons was issued on the 2d day of December, 1895, and was returnable to rules to be held on the 1st of December, 1895,—a day prior to the date on which it issued, and before the suit was instituted,—and a considerable portion of his argument is devoted to the consideration of this alleged mistake. A stipulation is filed with attorneys' brief for the appellees, signed by counsel for both parties, which reads as follows: "It is stipulated and agreed that the original summons in this case was issued to rules to be held on the first Monday of December, 1895, whereas it is printed on page 7 of record as 'on the 1st day of December, 1895.'" This stipulation therefore disposes of the first assignments of error, which were based upon the alleged fact that said summons was returnable to the 1st day of December, 1895.

The appellant assigns as the third point of error that the court erred in not sustaining the demurrer to plaintiffs' bill, and in overruling the same; as the bill clearly shows on its face that there was no debt due at the time of the institution of this suit. Can this assignment be sustained?

This suit was instituted December 2, 1895, and was predicated upon the alleged fact that they were the owners of fourteen shares of the defendant's stock, on which they had paid the sum of eight hundred and forty dollars. By article 29 of the by-laws of said corporation, in force at the time the plaintiffs became the owners of said stock, "members holding paid-up certificates, might, upon the surrender of such certificates, withdraw the amount paid on the same, at any time after three years from the date of issue, and before maturity, together with an annual interest of six per cent., said interest to be computed upon the withdrawal of paid-up certificates for even months only, and such paid-up certificates should cease bearing interest after the date of such application for withdrawal." The stock held by plaintiffs was issued August 10, 1892, and the holders were entitled to withdraw after three years from that date, by complying with the requirements of the by-laws then in force, as plaintiffs contend. Plaintiffs, between the 4th and 9th of September, 1895, executed proper applications for withdrawal, and sent them, by letter, their receipt, by defendant acknowledged, stating that they had been placed on file, and would be paid in regular order, under the rules of the association. Upon receipt of that letter, plaintiffs demanded immediate payment of the amount due, according to the contract. And by letter dated September 27, 1895, defendant informed plaintiffs that only one-half of the receipts of the association were applicable to the payment of withdrawals; that there were applications for withdrawal filed before theirs, amounting to one hundred and thirty thousand dollars, and the receipts of the association averaged about seven thousand five hundred dollars a month, and plaintiffs' certificates would have to wait their turn for payment. The by-laws under which the manner of payment of withdrawals was adopted was passed January 12, 1895, and formed no part of defendant's by-laws on August 10, 1892, when plaintiffs became owners of said certificates. On the face of these certificates of shares it was contracted that, in consideration of the money received, and full compliance with the terms and conditions as printed on back of certificates, the by-laws, etc., all of which were made

part of the contract, said defendant would pay said share-holders, their heirs, administrators, or assigns, the sum of ——— dollars at the end of five years, or at maturity. One of the conditions on the back of said certificate was that "the payment on this certificate cannot be withdrawn until after three years from the date" thereof; "if withdrawn between that date and maturity, the holder shall be entitled to receive sixty dollars for each of said shares, together with six per cent. interest per annum." These, with article 29 above quoted, were the conditions bearing upon the question of withdrawal from the association at the time plaintiffs became the owners of the certificates upon which this suit was predicated. They became part of the contract.

Could the contract be varied or altered by the enactment of subsequent laws, changing time and terms of payment? On this point, Beach on the Modern Law of Contracts (section 1223, p. 1615) says: "A person has the right to treat the by-laws given to him on becoming a member of the association as all the by-laws such association has; and he is not bound to take notice of modifications of such by-laws with respect to withdrawing, on the record of the company simply, without further notice to him, which notice must be proven by the defendant company to have been given,"—citing *McKenney* v. *Association*, 8 Houst, 557, (18 Atl. 905). Again, in *Association* v. *Lewis*, 1 Colo. App. 127, (27 Pac. 872), the court held that: "Where plaintiff became a member of defendant building association at a time when a by-law provided that all nonborrowing stockholders wishing to withdraw shall be privileged so to do upon giving notice to the directors of his or her intention, and shall be entitled to receive the amount of installments actually paid in without interest, plaintiff's right of withdrawal was a vested right, of which defendant could not deprive him without his own consent by a subsequent repeal of the by-law." The general proposition is well and properly stated in 5 Am. & Eng. Enc. Law, 96, where it says: "A corporation has not the power, by laws of its own enactment, to disturb or devest rights which it has created, or to impair the obligations of its contracts, or to change its responsibility to its members,

or to draw them into new and distinct relations; and all by-laws attempting to do this are inoperative and void,"—citing numerous authorities, among them *Pulford* v. *Fire Department*, 31 Mich., 458, where it is said: "By-laws and regulations of corporations merely govern future action. *Ex post facto* laws are no more lawful for corporations than for states." See, also, *Kent* v. *Mining Co.*, 78 N. Y., 159; *Becker* v. *Insurance Co.*, 48 Mich., 610, (12 N. W., 874).

Authorities might be multiplied upon this question, but these are regarded as sufficient to establish the doctrine of the inability of a corporation, by subsequent by-laws, to take from a stockholder therein vested rights, acquired under by-laws existing at the date of the contract made with the corporation at the time said shares were acquired. After agreeing that stockholders may withdraw at the end of three years, upon surrender of their paid-up certificates, the amount paid on same, with interest at six per cent. per annum, such corporation cannot, by subsequent by-law, provide that the association shall not be required to pay out, on withdrawing and matured stock, more than one-half the amount received from dues and stock payments in any month. To sustain the validity of such by-law would imply the right to say that but one-tenth of the receipts from dues and stock payments in any month should be paid on withdrawal, and thus indefinitely prolong the payment of withdrawal value, when, as in this case, the holder had fully complied with all the requirements of his contract. My conclusion, therefore, is that the court committed no error in overruling the demurrer. As to the right to recover, this Court held in *Haigh* v. *Association*, 19 W. Va., 793, that "a member of a building association who complies with its constitution and by-laws, and, under their provisions, withdraws, can recover the amount due him under such constitution and by-laws, by an action of *assumpsit* in which there is no special count, but only the common counts." So, in a recent case decided by the supreme court of South Carolina (*McNab* v. *Association*, 27 S. E. 543), it is held that "where a building and loan association's by-laws provide that a member who has made all payments may surrender his shares of stock

at any time after a certain period from the date of certificates, on giving a certain notice, and take the withdrawal value thereof in cash, the relation of debtor and creditor is established as soon as the member has surrendered his stock, and has given the required notice." In the case at bar these shareholders appear to have done all that their contract and the rules required of them, to entitle them to the withdrawal value of their shares with interest; and we must hold that the relation of debtor and creditor was established at the time the suit was brought.

The contention that the defendant was improperly proceeded against as a nonresident or foreign corporation has already been considered, and shown to be no longer an open question in this State.

The ninth condition found on the back of the certificates of shares, providing that any action brought against the association by shareholders shall be brought on or before six months from the date the cause of action accrues, and, in the county of Ontario, N. Y., was a void requirement, as jurisdiction cannot be taken away by consent. See *Nute* v. *Insurance Co.*, 9 Gray, 174-180; *Hall* v. *Insurance Co.*, 6 Gray, 185; *Reichard* v. *Insurance Co.*, 31 Mo., 518.

The affidavit and order of attachment sued out appear to be regular, and in compliance with the statute, and the lien thereby created properly directed to be enforced against the real estate levied upon. I am therefore of opinion that the decree complained of must be affirmed, with costs and damages.

*Affirmed.*