**LEASEWELL, LTD., a corporation, Plaintiff,**

v.

**JAKE SHELTON FORD, INC., a corporation, Defendant.**

**Civ. A. No. 76–0061–H.**

United States District Court, S. D. West Virginia.

Sept. 28, 1976.

William D. Levine, Huntington, W. Va., for plaintiff.

Menis E. Ketchum, Huntington, W. Va., for defendant.

## MEMORANDUM ORDER

HADEN, District Judge.

The Plaintiff, Leasewell, Ltd., a corporation with its principal place of business in New York, entered into a contract with the Defendant, Jake Shelton Ford, Inc., a corporation with its principal place of business in West Virginia, under which the Plaintiff agreed to lease to the Defendant certain items of automotive repair equipment. It is undisputed that the lease was executed and was to be performed in West Virginia. The lease contained the following provision:

"22. STIPULATION THAT AGREEMENT IS A LEASE UNDER NEW YORK LAW; VENUE OF LITIGATION; SERVICE OF PROCESS: It is hereby stipulated by and between the lessor and lessee that this agreement shall be deemed to be a lease. It is further stipulated that said lease was made in New York County, New York, regardless of the order in which the signatures of the parties shall be affixed hereto, and said lease shall be interpreted and the rights and liabilities of the parties here determined in accordance with the laws of the State of New York. As part of the consideration for the lessor's executing this lease, lessee hereby agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in courts located within the State of New York, and lessee hereby consents to the jurisdiction of any court located within the State of New York, and waives the personal service of any and all process upon the lessee herein, and consents that all such service of process may be made by certified or registered mail, return receipt requested, directed to the lessee at the addresses hereinabove stated; and service so made shall be complete five (5) days after the same have been posted as aforesaid."

Defendant received the equipment and made a number of payments. However, in April, 1975, Defendant ceased all payments.

Subsequently, Plaintiff instituted suit in New York, sending notice by mail in accordance with the contract, which notice was duly received by the Defendant. The Defendant made no appearance in the New York action, and, accordingly, a default judgment was entered in the amount of $10,127.41. Plaintiff has sued in this Court under diversity jurisdiction, 28 U.S.C. § 1332, to enforce that judgment and has subsequently moved for summary judgment under *Rule* 56, Federal Rules of Civil Procedure.

■ Article IV, Section 1 of the United States Constitution requires this Court to extend full faith and credit to the judgment of the court of any state if that court had jurisdiction and if the judgment was not procured by fraud. *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Jurisdiction over the person of the Defendant in New York was acquired, if at all, through the provision of paragraph 22 of the contract. Were it not for that contract provision, New York would lack both jurisdiction and venue. The only issue in this proceeding, therefore, is whether or not the contract provision providing for the acquisition of jurisdiction was valid.

■ The validity of the jurisdiction-giving clause in the contract is open to collateral attack. *Axelrod v. Premier Photo Service, Inc.,* 154 W.Va. 137, 173 S.E.2d 383 (1970). *Cf. Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Plaintiff contends that the Defendant had to voice this defense at the New York proceeding. Had the Defendant appeared in the New York proceeding undoubtedly this would have been true. *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

■ In *Baldwin v. Traveling Men's Ass'n,* 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), the United States Supreme Court held that if a foreign corporation makes a special appearance to contest *in personam* jurisdiction, it is bound by the jurisdictional determination of that court. Nevertheless, that Court added:

**1014**

"It [the foreign corporation] had the election not to appear at all. If, in the absence of appearance, the court had proceeded to judgment and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction." 283 U.S. at 525, 51 S.Ct. at 518.

It is clear that it is within the jurisdiction of this Court to construe the validity of the contract clause.[1]

■ In choosing which law to apply to this clause, it is obvious that the contract should be tested under whichever law is applicable had the questioned provision not been in the contract. See *Goff v. AAMCO Transmissions, Inc.,* 313 F.Supp. 667 (D.Md. 1970). To do otherwise would be to permit the clause to "pull itself up by its own bootstraps." In deciding an issue of conflicts of laws, a federal district court must apply the conflicts rules of the state in which it sits. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). West Virginia conflicts rules require that West Virginia law be applied to the contract since both the place of performance and the place of execution of the contract are in West Virginia. *Michigan National Bank v. Mattingly,* 212 S.E.2d 754 (W.Va.1975).

■ Clearly, a provision which merely chooses the applicable law to be applied to the contract is itself not contra to public policy. See *W.Va.Code,* 1931, 46–1–105(1),

as amended. To further restrict the jurisdiction and venue of the action, however, is another matter. In 1898, the West Virginia Supreme Court of Appeals held a clause in a stock certificate, which required any suit brought by a stockholder against the company to be brought in New York, void in that the jurisdiction of West Virginia courts could not be taken away by consent. *Savage v. Peoples Building, Loan, and Savings Ass'n,* 45 W.Va. 275, 31 S.E. 991 (1898). While never expressly overruled, the holding of this case has been eroded, significantly, over the years. In 1970, the West Virginia Supreme Court reviewed a contract which required any controversy arising thereunder to be submitted to arbitration in New York. The Court held that the arbitration award subsequently confirmed by the Supreme Court of New York was entitled to full faith and credit. Although this case is distinguishable in that the defendants had appeared in New York and participated in the arbitration proceedings, this case demonstrates that West Virginia no longer blindly follows the *Savage* rule. *Axelrod v. Premier Photo Service, Inc.,* 154 W.Va. 137, 173 S.E.2d 383 (1970).

In a recent case, *Board of Education v. W. Harley Miller, Inc.,* 221 S.E.2d 882 (W.Va.1975), the Court held that provisions in contracts providing submission to arbitration made arbitration a condition precedent to suit in the West Virginia courts. In that decision the Court notes that "the rationale supporting the common-law rule, i. e. to prevent parties by agreements from

---

1. It is not required that Defendant journey to New York to litigate the issue of whether it is reasonable to litigate in that forum. This was recognized by the District Court of the District of Columbia, which, in deciding whether to extend full faith and credit to a default judgment obtained in New York, stated that it could inquire as to the facts underlying the jurisdiction of the New York court, claimed under its long-arm statute. The court noted:

"It should be noted at the outset that it is the law of New York that a defendant's right to contest jurisdiction is not waived where he neither appears nor objects to jurisdiction prior to the entry of a default judgment against him. *Waters v. Waters,* 28 Misc.2d 289, 290, 212 N.Y.S.2d 856, 857 (Sup.Ct.,

New York County, 1961). See also J. Weinstein, H. Korn, A. Miller, Weinstein—Korn—Miller Manual: CPLR 3–9 (1967) . . . . Thus, Plaintiff's argument that Defendant was required to go into New York State to contest jurisdiction, and that his present jurisdictional objections come too late, is without merit. Defendants were free to 'ignore the [New York] proceedings and ultimately resist any enforcement of the default judgment' that Plaintiff obtained, since, if the judgment-rendering court lacked jurisdiction, the judgment is a nullity. H. Wachtell, New York Practice Under the CPLR 50 (2d ed. 1966)."

*Franklin National Bank v. Krakow,* 295 F.Supp. 910, 917 (D.D.C.1969).

ousting courts of jurisdiction, is frankly archaic." 221 S.E.2d at 885.

The United States Supreme Court has also commented on rules such as that of the *Savage* case, stating that

"the argument that such clauses [choice of forum clauses] are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historic judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972).

 The above cases amply illustrate that West Virginia, following the modern view, does not subscribe to the rule that "forum selection" clauses are *per se* void as violative of public policy. These cases do not, however, demonstrate that such clauses are enforceable in all instances. Rather the

rule of most jurisdictions and the rule that this Court believes that West Virginia should and would adopt is that such clauses will be enforced only when found to be reasonable and just. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Furbee v. Vantage Press, Inc.,* 150 U.S.App.D.C. 326, 464 F.2d 835 (1972); *Matthiessen v. National Trailer Convoy, Inc.,* 294 F.Supp. 1132 (D.Minn. 1968).[2]

 In determining whether such a provision is reasonable and just in a given situation, various factors have been considered. These include:

(1) The law which governs the formation and construction of the contract;[3]

(2) The residence of the parties;[4]

(3) The place of execution and/or performance of the contract;[5]

(4) The location of the parties and witnesses probably involved in the litigation;[6]

(5) The inconvenience to the parties;[7] and

---

2. Also in accord: *Fireman's Fund Amer. Ins. Cos. v. Puerto Rican Forwarding Co., Inc.,* 492 F.2d 1294 (1st Cir.1974); *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 234, n. 24 (6th Cir.1972); *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341 (3rd Cir. 1966); *Wm. H. Muller & Co. v. Swedish American Line Ltd.,* 224 F.2d 806 (2d Cir.), cert. denied, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955); *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361 (S.D.N.Y.1975); *St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.,* 401 F.Supp. 927 (D.Mass.1975); *Davis v. Pro Basketball, Inc.,* 381 F.Supp. 1 (S.D.N.Y. 1974); *Brown v. Gingiss International, Inc.,* 360 F.Supp. 1042 (E.D.Wis.1973); *Roach v. Hapag-Lloyd, A.G.,* 358 F.Supp. 481 (N.D.Calif.1973); *Spatz v. Nascone,* 364 F.Supp. 967 (W.D.Penn. 1973), supplemented, 368 F.Supp. 352 (1973); *Jack Winter, Inc. v. Koratron Co.,* 326 F.Supp. 121 (N.D.Calif.1971); *Goff v. AAMCO Transmissions, Inc.,* 313 F.Supp. 667 (D.Md.1970); *A. C. Miller Concrete Products Corp. v. Quikset Vault Sales Corp.,* 309 F.Supp. 1094 (E.D.Penn. 1970); *Hawaii Credit Card Corp. v. Continental Credit Card Corp.,* 290 F.Supp. 848 (D.Hawaii 1968); *National Equipment Rental, Ltd. v. Sanders,* 271 F.Supp. 756 (E.D.N.Y.1967); *Geiger v. Keilani,* 270 F.Supp. 761 (E.D.Mich. 1967); *Indussa Corp. v. S.S. Ranborg,* 260 F.Supp. 660 (S.D.N.Y.1966); *Hernandez v. Koninklijke Nederlandsche Stoomboot Maat.,*

252 F.Supp. 652 (S.D.N.Y.1965); *Euzzino v. London & Edinburgh Insurance Co.,* 228 F.Supp. 431 (N.D.Ill.1964); *Pakhuismeesteren, S.A. v. S.S. Goettingen,* 225 F.Supp. 888 (S.D. N.Y.1963); *Takemura & Co. v. S. S. Tsuneshima Maru,* 197 F.Supp. 909 (S.D.N.Y.1961); *Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co.,* 198 F.Supp. 284 (S.D.N.Y.1961); *Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst,* 154 F.Supp. 886 (S.D.N. Y.1957).

3. *Furbee v. Vantage Press, Inc.,* 150 U.S.App. D.C. 326, 464 F.2d 835 (1972); *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361 (S.D.N. Y.1975); Collins, *Choice of Forum and the Exercise of Judicial Discretion—The Resolution of an Anglo-American Conflict,* 22 Int'l & Comp. L.Q. 332 (1973).

4. *Furbee, supra.*

5. *Id.*

6. *Furbee, supra* ; *Matthiessen v. National Trailer Convoy, Inc.,* 294 F.Supp.1132 (D.Minn. 1968).

7. The *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Gaskin, supra* note 3; *Collins, supra* note 3.

(6) Whether the provision was equally bargained for.[8]

Applying these factors to the instant case, this Court finds:

(1) That the formation and construction of the contract, in the absence of the paragraph in controversy, would be governed by the West Virginia law;

(2) That the Plaintiff is a resident of New York; the Defendant of West Virginia;

(3) That the contract was executed and performed in West Virginia until the alleged breach;

(4) That nearly all, if not all, the witnesses probably involved in the litigation are located in West Virginia;

(5) That to require the Defendant to take all witnesses to New York would cause it great inconvenience;

(6) That the provision was not the result of equal bargaining positions.[9]

As the New York District Court stated in *Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361 (S.D.N.Y.1975), "In this context, the question is not whether the agreement is, as a matter of law, vitiated by the lack of equality, but rather whether justice requires that a distinction be drawn between freely negotiated contracts and standard form contracts, particularly where there is a lack of equality." 390 F.Supp. at 365 n. 5, *citing Collins, supra* note 3, at 338. The court also noted that "conduct which does not rise to the level of unconscionability as a matter of contract law may well warrant consideration under the 'inequality' or 'overweening bargaining power' element of the reasonableness test." 390 F.Supp. at 365 n. 6.

In *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), the United States Su-

preme Court held that service upon an agent appointed by contract was valid under *Rule* 4(d)(1) of the Federal Rules of Civil Procedure. That decision related to service in the Federal courts and is distinguishable from the instant case, because this Court must pass, as a matter of West Virginia substantive law, on whether such a contract provision is reasonable and therefore valid. In viewing the provisions, *sub judice*, this Court finds Mr. Justice Black's comments in his dissenting opinion in the Szukhent case to be most persuasive:

"The Court relies on the printed provision of the contract as a consent of the Szukhents to be sued in New York, making the *Pennoyer* rule inapplicable. In effect the Court treats the provision as a waiver of the Szukhents' constitutional right not to be compelled to go to a New York court to defend themselves' against the company's claims. This printed form provision buried in a multitude of words is too weak an imitation of a genuine agreement to be treated as a waiver of so important a constitutional safeguard as is the right to be sued at home. Waivers of constitutional rights to be effective, this Court has said, must be deliberately and understandingly made and can be established only by clear, unequivocal, and unambiguous language. It strains credulity to suggest that these Michigan farmers ever read this contractual provision about Mrs. Weinberg and about 'accepting service of any process within the State of New York.' And it exhausts credulity to think that they or any other laymen reading these legalistic words would have known or even suspected that they amounted to an agreement of the Szukhents to let the company sue them in New York should any controversy arise. This Court should not permit valuable

---

**8.** *Bremen, supra; Matthiessen, supra* note 6; *Gaskin, supra* note 3; *Paragon Homes, Inc. v. Carter,* 56 Misc.2d 463, 288 N.Y.S.2d 817 (*Supreme Court, Nassau County,* 1968), aff'd 30 A.D.2d 1052, 295 N.Y.S.2d 606 (App.Div.1968); *Collins, supra* note 3; Note, 37 Tex.L.Rev. 225, 227 (1958).

**9.** Given the fact that the provision in question is buried in a full page of small print in a standard form contract and given that the contract contains a provision which states that no employee or agent may modify any term of the contract (paragraph 19), there is no justification in assuming for the purpose of summary judgment, that the provision was knowingly or understandingly bargained for between equals.

constitutional rights to be destroyed by any such sharp contractual practices. The idea that there was a knowing consent of the Szukhents to be sued in the courts of New York is no more than a fiction—not even an amiable one at that." 375 U.S. at 332–33, 84 S.Ct. at 423.

Mr. Justice Black also warned of the potential harms in holding otherwise:

"Holding this service effective inevitably will mean that the Szukhents must go nearly a thousand miles to a strange city, hire New York counsel, pay witnesses to travel there, pay their own and their witnesses' hotel bills, try to explain a dispute over a farm equipment lease to a New York judge or jury, and in other ways bear the burdens of litigation in a distant, and likely a strange, city. The company, of course, must have had this in mind when it put the clause in the contract. It doubtless hoped, by easing into its contract this innocent-looking provision for service of process in New York, to succeed in making it as burdensome, disadvantageous, and expensive as possible for lessees to contest actions brought against them." 375 U.S. 326–27, 84 S.Ct. 420.

. . . . .

"The end result of today's holding is not difficult to foresee. Clauses like the one used against the Szukhents—clauses which companies have not inserted, I suspect, because they never dreamed a court would uphold them—will soon find their way into the 'boilerplate' of everything from an equipment lease to a conditional sales contract. Today's holding gives a green light to every large company in this country to contrive contracts which declare with force of law that when such a company wants to sue someone with whom it does business, that individual must go and try to defend himself in some place, no matter how distant, where big business enterprises are concentrated, like, for example New York, Connecticut, or Illinois, or else suffer a default judgment. In this very case the Court holds that by this company's carefully prepared

contractual clause the Szukhents must, to avoid a judgment rendered without a fair and full hearing, travel hundreds of miles across the continent, probably crippling their defense and certainly depleting what savings they may have, to try to defend themselves in a court sitting in New York City." 375 U.S. at 328–29, 84 S.Ct. at 421.

This Court does not pass upon the issue of whether a *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), waiver is necessary to be shown to validify such a provision. This Court also need not address the issue of whether the unequal bargaining power is itself sufficient to render the provision unreasonable.

Under the facts as found by this Court, this Court holds it would be unjust and unreasonable to give enforcement to the assailed provision of the contract.

Accordingly, this Court refuses to extend full faith and credit to the judgment of the Supreme Court of the State of New York, County of New York, entered December 1, 1975 against the Defendant herein, and Plaintiff's motion for summary judgment is hereby DENIED, but the Plaintiff is granted leave to amend its complaint to enable it to proceed on the merits of its claim.