486 F.Supp. 815 (1980)
DICK PROCTOR IMPORTS, INC., Plaintiff,
v.
SUMITOMO CORPORATION OF AMERICA, Formerly known as Sumitomo Shoji America, Inc., Defendant.
No. 80-37C(2).
United States District Court, E. D. Missouri, E. D.
March 28, 1980.
*816 *817 J. William Newbold and Ellen E. Bonacorsi, Coburn, Croft & Putzell, St. Louis, Mo., for plaintiff.
Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., Wender, Murase & White, New York City, for defendant.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on the motion of defendant to dismiss or to transfer. This suit was originally instituted in the Circuit Court of St. Louis County, and subsequently removed to this Court pursuant to 28 U.S.C. § 1441(a) due to diversity of citizenship. See, 28 U.S.C. § 1332.
Plaintiff became the exclusive distributor in Missouri and eastern Kansas of defendant's farm implements in January, 1977. The agreement between the parties was set out briefly in a letter from defendant to plaintiff, which was to be subsequently superseded by a formal franchise agreement. The formal agreement was executed in January, 1978, and contains the provision which is the basis of the instant motion. Paragraph XXI(b) of the agreement provides as follows:
(b) The laws of the State of New York shall govern with respect to legal interpretation of this Agreement; provided, however, that in the event the DISTRIBUTOR, upon just cause, desires to bring an action against the COMPANY, it shall only do so in the City and State of New York; and if the COMPANY, upon just cause, desires to bring an action against the DISTRIBUTOR, it shall only do so in the state of the DISTRIBUTOR'S principal place of business.
This provision immediately precedes plaintiff's signature on the agreement.
Plaintiff performed pursuant to the agreement until October 1, 1979, when it was notified by defendant that the distributorship was being terminated effective December 31, 1979. Plaintiff instituted this action alleging that the distributorship contained an implied condition that plaintiff would retain the distributorship at least long enough to allow it to recoup its initial investment. On this theory, plaintiff seeks damages and injunctive relief.
Defendant now moves to enforce the contractual venue limitation. Plaintiff initially argues that the instant case does not fall within the venue provision. Such a claim is clearly unsupportable. The provision, by its very terms, covers suits brought by the distributor against the defendant. There is no limitation, as plaintiff argues, such that the provision applies only to suits brought to "interpret" the agreement. This suit arises out of the relationship between the parties which is formalized by the agreement. To base the suit on an alleged condition implied by law does not avert the fact that the suit is based, ultimately, on this relationship. This suit is clearly covered by the venue limitation provision. Full-Sight Contact Lens v. Soft Lenses, Inc., 466 F.Supp. 71 (S.D.N.Y.1978); Cruise v. Castleton, Inc., 449 F.Supp. 564 (S.D.N.Y.1978).
Plaintiff argues that the provision in question would not be enforced by the courts of Missouri, Reichard v. Manhattan Life Ins. Co., 31 Mo. 518 (1862), and that this Court, sitting via diversity, should likewise refuse to enforce it. Reichard was based on the notion that such venue limitation provisions divested the Missouri courts of jurisdiction.
Initially, this Court must seriously question the continuing validity of the Reichard precedent. Though Reichard has never been expressly overruled, it also appears that no Missouri court has dealt with this issue in many years. This Court, sitting via diversity, need not blindly follow existing but outdated precedent in the forum state; it should seek to determine how the courts of the forum state would decide the issue at bar were that issue presented to them at this time. Cruise, supra.
*818 The jurisdictional concern expressed by the court in Reichard has long grown outdated. The modern trend is clearly away from such protectionist attitudes and towards the realization that parties should be able to freely decide to limit their venue options. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Courts of the non-selected venue are not divested of jurisdiction; they are merely asked to exercise that jurisdiction only to the extent of enforcing the venue provision. Id.
This Court need not definitely decide at present, however, the favor with which Missouri courts would presently look upon venue limitation provisions. Federal courts are bound to follow forum law with respect to matters of substance, Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); federal courts are not so bound as to other matters. The issue of whether the venue limitation in question is substantive has split the courts which have decided it so far. See, Taylor v. Titan Midwest Const. Corp., 474 F.Supp. 145 (N.D.Tex.1979), and cases cited therein. This Court must agree, however, with Taylor, id.
In a sense, the validity of venue limitation provision is a matter of contract law. In a larger sense, however, this issue concerns the proper venue in the federal court system. Venue is clearly a matter of procedure, and, as such, governed by federal law. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The provision does not alter existing rules of contract enforcement or interpretation, but, rather, alters the venue provisions as set out in the relevant statutes. The venue statutes of Missouri do not apply in this Court, and the provision therefore alters only the federal statutory scheme as to venue. This attempted alteration of the federal venue provisions should be governed by federal law. Taylor, supra.
The Supreme Court held, in The Bremen, supra, that such provisions should be enforced absent compelling and countervailing reasons. Plaintiff fails to offer sufficient justification for ignoring the contractual provision in this case.
Plaintiff argues that the provision was not made a part of the distributorship agreement until it was too late for plaintiff to back out. It is true that the provision was not in the initial letter confirming the distributorship. It is also true, however, that plaintiff was aware that the initial letter was to be replaced by a subsequent formal agreement.
Even accepting plaintiff's assertion that at the time the formal agreement was presented it had already expended considerable time, money and effort with respect to the distributorship, this is not a sufficient justification for ignoring the provision. Plaintiff is a sizable business run by men of considerable business acumen and experience. It embarked on a costly new venture, and must be assumed to have been aware of the consequences prior to its initial expenditures.
Plaintiff signed the agreement and, by doing so, assented to the terms therein.
It is not the province of the courts to scrutinize all contracts with a paternalistic attitude and summarily conclude that they are partially or totally unenforceable merely because an aggrieved party believes that the contract has subsequently proved to be unfair or less beneficial than anticipated.
Geldermann & Co., Inc. v. Lane Processing, Inc., 527 F.2d 571, 576 (8th Cir. 1975). The provision limiting venue is clearly not unconscionable, and this Court will, therefore, not decline enforcement on that ground.
In The Bremen, supra, the Supreme Court also indicated that provisions such as involved in this case might be unenforceable if the circumstances of the case dictated that enforcement would be unreasonable or unjust. The circumstances of this case clearly do not so dictate. Though plaintiff's witnesses may be located in Missouri, defendant's witnesses are likely to find New York more convenient. Any inconvenience to plaintiff should have been foreseen when the agreement was signed. The Bremen, *819 supra. This Court can not say "that trial in the contractual forum will be so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of [its] day in court." Id., 407 U.S. at 18, 92 S.Ct. at 1917.
Lastly, it does not appear that enforcement of this provision would contravene a strong public policy of the forum state. As discussed earlier, it is unclear exactly what policy the Missouri courts would choose to follow in this regard. As such, this Court can not conclude that a "strong" public policy would be contravened by enforcement of the provision which plaintiff agreed to.
Therefore, defendant's motion to transfer will be granted and this case will be transferred to the Southern District of New York.