**Michael KOLENDO, Plaintiff,**

v.

**JERELL, INC., a corporation, Defendant.**

**Civ. A. No. 80–3019.**

United States District Court,
S. D. West Virginia,
Huntington Division.

May 21, 1980.

William D. Levine, Huntington, W. Va., for plaintiff.

John E. Lutz, Jr., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

STAKER, District Judge.

This is an action for anti-trust violations, unlawful price discrimination, breach of contract, and tortious interference with prospective economic advantage. Defendants have moved to dismiss the complaint, or in the alternative to quash the return of service, or in the alternative to transfer this cause to another district, upon the grounds of unlawful service of process and improper venue. Subsequent to the filing of its motion, defendant withdrew objections to the manner of service. Accordingly, the Court is left only to decide the motion to dismiss or transfer upon the ground of improper venue.

The major question here concerns the enforceability of a forum selection clause appearing in a contract between plaintiff and his former employer, the defendant. That, absent that forum selection clause, venue would lawfully lie either in the Southern District of West Virginia, wherein this claim was sued and wherein the causes of action arose, or in the Northern District of Texas, where the defendant is incorporated and has its principal place of business, is not in dispute. 15 U.S.C. §§ 15, 22; *Pure Oil Company v. Suarez*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966); 28 U.S.C. § 1391(c). Thus, the sole issue before this Court is the effect to be given to the agreement fixing venue in Texas.

Forum selection agreements have historically been held in disfavor by American Courts, a mood resting partly upon a statement (in dictum) by the Supreme Court to the effect that agreements purporting to restrain resort to certain courts " . . .

would [not] be valid[,]" [*Home Insurance Co. v. Morse*, 20 Wall. 445, 22 L.Ed. 365 (1874)], and partly upon a supposed interference with the fraternal considerations of judicial symmetry and general convenience. *Nute v. Halt Mutual Insurance Co.*, 72 Mass. (6 Gray) 174 (1856).

The *Morse* rule represents the older, and now outmoded, view. Forum selection agreements are essentially pre-litigation waivers of venue, and since even a venue fixed by law stands merely as a waivable privilege [28 U.S.C. § 1406(b)], there appears to be no good reason why a party may not, by contract or otherwise, and prior to any litigation, set venue in one location, though the law may permit that party other possible fora. As between a post-suit waiver and a pre-suit voluntary agreement fixing venue, there is little qualitative difference.

■ The Supreme Court has largely acceded to this view by holding, in *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1971), that forum selection clauses were to be honored by the courts absent some countervailing "strong public policy" of the forum in which the suit is brought. Exemplary policies include unreasonableness in the application of the forum selection clause to the facts at hand, or fraud or overreaching. The burden of proving the existence and relevance of such a policy rests upon the one seeking the denial of enforcement, and that person must "clearly show" cause for denial of enforcement. *Zapata, supra.*

Bound as the Court is by the *Erie* doctrine, we must look to the law of the forum to determine the validity of particular contract clauses. See *Scudder v. Union National Bank*, 91 U.S. (1 Otto) 406, 23 L.Ed. 245 (1875). The policy of this forum was once the same as that implied by the *Morse* rule: Jurisdiction (or venue) of West Virginia Courts could not be limited by consent. *Savage v. Peoples Building, Loan & Savings Association*, 45 W.Va. 275, 31 S.E. 991 (1898). West Virginia has not overruled the *Savage* case. However, the *Savage* rule—proscription of agreements to

oust jurisdiction for venue—has recently been termed by the West Virginia Supreme Court of Appeals as "archaic" [*Board of Education of the County of Berkley v. W. Harvey Miller, Inc.*, 221 S.E.2d 882 (1975)], thus reducing it ostensibly and *sub silentio* to mere historical curiosity. Forum selection clauses appearing in contracts governed by West Virginia Law now appear to be *prima facie* valid. See *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.W.Va.1976).

■ Nevertheless, it must not be assumed that *prima facie* validity means, in all but the most unconscionable cases, certain enforcement. The *Zapata* decision leaves to the courts a certain power to consider mitigating factors, and though defendant bears a heavy burden of persuasion, the courts should give fair hearing to any defendants claiming some needed mitigation. This Court reads *Zapata* to mean, in its effect, that a forum selection clause appearing in a contract should not be regarded with quite the same reverence as is typically given to contractual clauses.

The Supreme Court has itself cited four mitigating factors, without specifying either their sufficiency or exclusivity; (a) inconvenience to the parties; (b) fraud; (c) undue influence; or (d) overweening bargaining power. *Zapata, supra in passim.* Other courts have recognized additional factors: (a) the applicable governing law [*Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341 (3rd Cir. 1966)]; and (b) the place of execution and/or performance of the contract [*Furbee v. Vantage Press Co.*, 464 F.2d 835, D.C.Cir.]. These factors are, of course, facets of the evasive and ambiguous "public policy" exception to any rule of law. They should represent a recognition that no rule of law should be applied too restrictively. It should therefore be apparent that a defendant need not be forced to meet all or even most of the enumerated criteria. Rather, a defendant need simply to convey to the Court a set of qualitative factual circumstances warranting denial of enforcement. The Court must then determine if such circumstances exist.

The Supreme Court's statements in *Zapata* beckon that any evaluation of a particular forum selection clause begin with them. Firstly, it has never been contended, nor does it seem to be an issue, that this contract was fraudulent or the result of undue influence. No evidence on either score appears in the record.

Secondly, there is the matter of inconvenience. This is an especially important criteria since venue is, after all, a principle of law partially grounded upon notions of convenience. In determining just how much inconvenience is sufficient, the court is necessarily to use its common sense. Each case of "inconvenience" is determinable only with reference to the facts of a particular case.

In the case at bar, there are several things to consider. At least one party is a citizen of the forum state—in this case, the plaintiff (who is also the one seeking a denial of enforcement). Because of plaintiff's citizenship in this forum, it is quite reasonable that this court should continue to exercise its jurisdiction if only to satisfy the policy that a forum owes to its citizens the protection given by law; i. e., in this case, the right to lay venue here if the cause of action occurred here.

Furthermore, since a case such as this will require many witnesses, it is relevant to inquire into their residences and business territories. By affidavit of one of defendant's vice-presidents, Marty Steinman, the Court has learned that approximately 76.9 per cent of all sales attributed to plaintiff occurred in Pennsylvania and the remainder in West Virginia, and that none of his sales occurred in Texas. The Court is also told that some of plaintiff's allegations will necessarily involve witnesses who live in New York, Pennsylvania and Texas, and also documents located in Texas. The Court does not view these statistics as sufficient reason to justify transfer to Texas. If anything, the fact of sales and witnesses in West Virginia and in Pennsylvania cuts sharply against such a transfer.

The court adds that if plaintiff's business was conducted in Pennsylvania and West Virginia, then it stands to reason that any beneficiaries of the alleged price discrimination also do business in one or both of those states, and further, since plaintiff has claimed an injury to his reputation and credibility, witnesses who will testify on this score will also likely live or do business in one of those two states. Surely, it would be more convenient and cheaper to transport all of these witnesses and documents from New York and Pennsylvania to West Virginia than to Texas.

On balance then, as between West Virginia and Texas, it cannot be gainsaid that West Virginia is the more convenient forum. A party forced to transport himself and several witnesses several thousand miles might find himself quite seriously inconvenienced, perhaps to the point of deciding that the cost of bringing the lawsuit no longer supports its feasibility. To say simply that this was one of the considered potential effects of this agreement, or even to call this an aspect of the agreement, strains credulity. Defendant has simply not offered any sound business (or other) justification that this clause was truly agreed upon by plaintiff free of coercive business considerations.

Thirdly, the final *Zapata* guidepost—overweening bargaining power—seems to be relevant here. According to plaintiff's affidavit, the forum selection clause was contained in an agreement supplemental to the original contract. This supplemental agreement was presented to the plaintiff eleven months after the commencement of his contractual relationship with defendant, upon the alleged condition that the failure to sign it would mean the end of his employment. This is, of course, a serious allegation, but it remains as yet unrebutted. The Court must accept it, for the moment, as true. If it is true, then it is illustrative of the type of inordinacy referred to by *Zapata*.

Moreover, Jerell, the defendant, voluntarily chose to do business in West Virginia and just as voluntarily chose not to bring in its salesman from another state. It is not, therefore, in the least unreasonable for a defendant doing business in the jurisdiction to be sued there. The parties should understand that this is not a repudiation of the *Zapata* rationale. The *Zapata* facts reveal

an American plaintiff, a German defendant, an ocean-going drilling rig being towed through the Gulf of Mexico, across the Atlantic Ocean, into the Mediterranean, and then Adriatic Seas, all the way to Italy. Justice Burger said, for a nearly unanimous court, "[t]he [ship] could have been damaged at any point along the route, and there were countless possible . . . there is strong evidence that the forum clause was a vital part of the agreement . . . [the] selection of a . . . forum was clearly a reasonable effort to bring a vital certainty . . . to this . . . transaction."

The agreement at issue here hardly presents the same number of possible fora, nor the potential variance, and hence uncertainty, in application of legal principles as did *Zapata*. This, it is substantially less likely that the forum selection clause involved herein was subject to the same free and equal bargaining power between two equally able parties.

■ •Fourthly, the potential choice of law problems urge, from a different perspective, yet another evaluation of the forum selection clause. As to the claim in tort for an alleged injury to reputation the law applicable is that of the place of wrong. *Ireland v. Britton*, 157 W.Va. 327, 201 S.E.2d 109 (1973). The alleged injury to reputation occurred either in West Virginia or Pennsylvania or both. Pennsylvania takes a more flexible "governmental interest" approach to tort choice-of-law problems. *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964). But, it would be rather unlikely that the Texas' interests would play a predominant role in a governmental interests calculus, thus employed by a Pennsylvania Court, where a Texas corporation doing business in both Pennsylvania and West Virginia and is sued by one of its West Virginia salesmen. Thus, as with respect to the total claim, Texas law would certainly not apply.

■ As to the contract claim, matters respecting the bringing of the suit are determined by the law of the forum, *Scudder v. Union National Bank*, 91 U.S. (1 Otto) 406, 23 L.Ed. 245 (1875), here West Virgin-

ia. Matters bearing on the performance of a contract are determined by the law of the place in which the contract was to be performed. *Scudder, supra*; i. e., West Virginia and/or Pennsylvania. In saying that Texas is not a more apt forum to apply West Virginia law, this Court does not disparage the quality of its courts, but merely recognizes the value of day-in-day-out familiarity with the applicable principles of law. West Virginia Courts are more appropriate fora to interpret and apply West Virginia law. Accordingly, the choice of law consideration, when added to the fact that both West Virginia and Pennsylvania were the places of performance (and that Texas was most certainly not the place of performance) militates strongly against the transfer to Texas.

Accordingly, this motion is in all respects denied.