**Leon KLINE, d/b/a Brighton Music Center, Plaintiff,**

v.

**KAWAI AMERICA CORPORATION, a California Corporation, Defendant.**

**No. Civil 4–80–425.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 15, 1980.

J. Michael Rosso, Dahle, Rosso, Beutel, Johnson & Rosso, New Brighton, Minn., for plaintiff.

Craig W. Gagnon and Mark C. Peterson, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to dismiss on the ground that a contract forum–selection clause requires that this lawsuit be brought in Los Angeles County, California.

*FACTUAL BACKGROUND*

In 1978 plaintiff Leon Kline purchased Brighton Music Center in New Brighton, Minnesota. Affidavit of Leon Kline (hereinafter "Kline Aff.") ¶ 2. For the first year or so, he sold some pianos and organs imported by defendant Kawai America Corporation (hereinafter "Kawai"), a California corporation which is a subsidiary of a Japanese firm. In December of 1978 Kawai sent Kline a copy of its standard dealer agreement. Affidavit of Richard Evans (hereinafter "Evans Aff.") ¶ 4. Kline did not sign the agreement, but told Richard Evans, Kawai's regional manager, that he wanted to show the agreement to his attorney before signing it. Evans Aff. ¶ 4. After some months, another copy was sent to Kline from Kawai's California headquarters. A representative of Kawai had signed the agreement on April 15, 1979. Kline affixed his signature on April 25, 1979.

The agreement provided, at ¶ 1(C), that Kawai could extend the agreement for one year by notifying the dealer in writing. Kawai did so on April 16, 1980. But the Kawai–Kline relationship soured shortly thereafter. On May 27, 1980, Kline was notified by letter that

Due to the inactivity of your account and Kawai America Corporation's large contingent liability, this is to inform you that your account is hereby terminated.

Kline's complaint consists of four counts: I) that Kawai breached the dealer agreement by terminating Kline without 30 days written notice, pursuant to ¶ 6(A) of the agreement; II) that Kawai unreasonably cancelled plaintiff's line of credit, which plaintiff received through ITT–Diversified Credit of Santa Fe Springs, California; III) that Kawai conspired with Schmitt Music Company of Minneapolis to make Schmitt the exclusive Kawai dealer in the Twin Cities area, in violation of Minn.Stat. § 325.-8014–8028, a restraint of trade statute; and IV) that Kawai misrepresented that it would extend to plaintiff a significant line of credit, an allegation factually related to Count II.

Kawai has moved to dismiss, on the ground that this action should have been filed in the County of Los Angeles in California. The dealer agreement provides, at ¶ 9(K), that

This Agreement shall be governed by the laws of the State of California, and any and all rights and obligations under this Agreement, including matters of construction, validity and performance, obligations, and conflict of laws, shall be governed by the laws of the State of California, and no other jurisdiction. Further, if any dispute arises out of, or in connection with this Agreement, the DEALER agrees to bring suit against KAWAI only in a court located in the County of Los Angeles, State of California, if such court properly has jurisdiction and venue, and violation of this covenant will bar recovery by the DEALER in any other Court.

## RELATIONSHIP OF THE COUNTS TO THE DEALER AGREEMENT

The threshold question is whether Kline's claims "arise out of, or in connection with" the dealer agreement.

■ Clearly, Count I, relating to lack of notice of termination, directly arises out of the agreement. Count II also appears to arise out of the agreement. The agreement provides, at ¶ 2, that Kline was to maintain and employ an established line or lines of

credit with banks or financial institutions approved by Kawai. Kline contends that as part of the termination, Kawai cancelled his credit line through ITT. Thus, the credit dealings of the parties appear to be one aspect of their overall relationship covered by the agreement. Count IV alleges misrepresentations with respect to Kline's credit lines. Although misrepresentation is a tort, the misrepresentations, if any, concerned Kline's credit line, and thus arise out of, or are at least connected with, the agreement. Plaintiff does not argue that Counts I, II, and IV do not arise out of, or are not in connection with, the agreement.

There is, however, a dispute as to Count III, which alleges a conspiracy to monopolize and restrain trade. The Court finds that Count III is grounded upon the allegations in Counts I, II, and IV, and thereby arises "in connection with" the agreement. Plaintiff will of necessity attempt to prove the allegations in Counts I, II, and IV in order to prove a conspiracy. Therefore, all four counts should be litigated in the same forum. To do otherwise would be contrary both to the dealer agreement and to principles of judicial economy. *See Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 75 (S.D.N.Y. 1978).

## REASONABLENESS OF THE FORUM– SELECTION CLAUSE

Whether all of the counts should be litigated in Minnesota or in Los Angeles County turns on whether the forum–selection clause in the dealer agreement should be enforced.

Under federal common law, forum–selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (hereinafter *"The Bremen"*). The party resisting enforcement of the clause bears a heavy burden of proof to show unreasonableness. *Id.*, at 17, 92 S.Ct. at 1917.[1] The Court believes that the reasonableness test is also the law of both California and Minnesota, the two states connected with this litigation.[2]

It must now be determined whether the forum–selection clause in the dealer agreement was and is reasonable. A number of factors are relevant to this determination, including 1) which law governs the

---

1. Plaintiff argues that the test formulated in *The Bremen* is inapplicable to the instant case because *The Bremen* was a lawsuit in admiralty. However, the Court's opinion implied that the test is applicable to domestic cases. *Id.* Also, virtually every federal decision since 1972 that has considered the question has held that *The Bremen* is applicable to suits between parties of different states. *In re Fireman's Fund Ins. Companies, Inc.*, 588 F.2d 93, 95 (5th Cir. 1979); *Kolendo v. Jerell, Inc.*, 489 F.Supp. 983, 985 (S.D.W.Va.1980); *Dick Proctor Imports, Inc. v. Sumitomo Corp. of America*, 486 F.Supp. 815, 818 (E.D.Mo.1980); *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F.Supp. 1140, 1143 (W.D.Va.1979); *Taylor v. Titan Midwest Const. Corp.*, 474 F.Supp. 145, 148 (N.D. Tex.1979); *Public Water Supply District No. 1 v. American Insurance Co.*, 471 F.Supp. 1071, 1072 (W.D.Mo.1979); *Cruise v. Castleton, Inc.*, 449 F.Supp. 564, 567 (S.D.N.Y.1978); *St. Paul Fire & Marine Ins. Co. v. Travelers Indemnity Co.*, 401 F.Supp. 927, 929–30 (D.Mass.1975); *Spatz v. Nascone*, 368 F.Supp. 352, 356 (W.D. Pa.1973).

2. There is dictum in an old Minnesota case, *Detwiler v. Lowden*, 198 Minn. 185, 269 N.W. 367 (1936), to the effect that forum clauses are contrary to public policy. However, in *Mattheissen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132, 1134 (D.Minn.1968), the court noted that there is a "lack of current precedent" in Minnesota concerning forum clauses. In *Matthiessen,* the court adopted the "modern view" that a court "may in its discretion refuse to assert its jurisdiction if, upon the facts in the present case, the agreement does not appear unreasonable." 294 F.Supp. at 1134–35. The *Matthiessen* decision's use of the double negative term "not ... unreasonable" appears to be consistent with the Supreme Court's approach in *The Bremen.*

   *The Bremen's* test is most likely also the law in California. *Cf. Jack Winter, Inc. v. Koratron Co.*, 326 F.Supp. 121, 125–26 (N.D.Cal.1971) ("reasonableness" test applied, but no explicit mention of California law). The Court notes that the Restatement (Second) of The Conflicts of Laws § 80 provides that forum–selection clauses will be given effect unless "unfair and unreasonable."

formation and construction of the contract; 2) the residency of the parties; 3) the place of execution and/or performance of the contract; 4) the location of the parties and witnesses probably involved in the litigation; 5) the inconvenience to the parties; and 6) whether the provision was equally bargained for. *Leasewell, Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1015–16 (S.D.W.Va.1976). *See Furbee v. Vantage Press, Inc.,* 464 F.2d 835, 837 (D.C.Cir. 1972) (first four factors used).

With respect to which law governs the formation and construction of the contract, the dealer's agreement specifically provides that California law shall apply. The law relevant to Count III is a Minnesota statute, but there is no reason to believe that a California court could not competently apply Minnesota's statute to the facts of this case.

The second factor, the residency of the parties, cuts for or against neither party. Kline is a Minnesota resident, and Kawai's headquarters and place of incorporation is California.

■ The third factor is the place of execution and/or performance of the contract. The contract's primary place of performance is Minnesota. Kawai was to ship pianos and organs to Minnesota for sales by Kline to Minnesota customers. Kline was the final signatory to the agreement, so the contract was "made" in Minnesota, according to the laws of both Minnesota and California. *Johnny's Plumbing & Heating, Inc. v. Sperry Rand Corp.–Univac Division,* 298 Minn. 294, 215 N.W.2d 63, 65 (1974); *New England Mutual Life Ins. Co. v. Lauffer,* 215 F.Supp. 91, 97 (S.D.Cal.1963).

With regard to the location of the parties and witnesses, Kline is located in Minnesota and Kawai executives are located in California.[3] Evidently employees of ITT–Diversified Credit, which is located in California, will be witnesses for one or both sides. Plaintiff's brief notes, without elaboration, that Kline will present Minnesota witnesses

other than himself. Neither side states whether witnesses from Schmitt Music, located in Minneapolis, will be called. The parties–witnesses factor is certainly not conclusive.

With regards to inconvenience to the parties, it is more difficult for Kline to litigate in California than for Kawai to appear in Minnesota. But the case law differs as to how much weight should be placed on the inconvenience factor. In *Matthiessen v. National Trailer Convoy, Inc.,* 294 F.Supp. 1132, 1135 (D.Minn.1968), inconvenience was the determining factor; plaintiff alleged that he would be unable to prosecute a claim against defendant if the forum clause was enforced. But in *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71, 74 (S.D.N.Y.1978), the court stated that "[p]laintiff cannot be heard to complain about inconveniences resulting from an agreement it freely entered into." Thus, the inconvenience factor is tied to the final factor, whether the clause was equally bargained for.

■ On the one hand, the dealer agreement is boilerplate, a fact which suggests that the equities of the contract should be carefully examined. *Taylor v. Titan Midwest Const. Corp.,* 474 F.Supp. 145, 149 (N.D.Tex.1979). There is no evidence that any negotiations concerning the forum clause, or any particular clauses, occurred. Kline contends that he was forced to sign the agreement to guarantee a continued supply of Kawai products, Kline Aff. ¶ 4, a fact that Kawai disputes, Evans Aff. ¶ 4.

On the other hand, the agreement is easily readable and consists of a little more than two pages. Most of its clauses favor Kawai, but the termination clause also benefits Kline. Kline is bringing suit under that clause. The agreement was renewed in 1980 with no objections from Kline.

Also, Kline is by no means an unsophisticated individual. Kline has worked for LaBelle's (a large Minneapolis sales enterprise) in an executive capacity and current-

---

**3.** It is not clear where Richard Evans, Kawai's regional manager, is located. According to his affidavit, at ¶ 1, he is manager for the states of Minnesota, Wisconsin, Iowa, and Illinois.

ly owns a computer training business. Evans Aff. ¶ 3. A person with Kline's business experience likely has the capacity to evaluate agreements such as that involved in this case. Finally, according to Evans, Kline said that he wanted to show the dealer agreement to his attorney before he signed it, Evans Aff. ¶ 4, indicating that Kline went into the agreement with his eyes open.

After carefully considering and weighing the above factors, the Court is convinced that the plaintiff has not met his burden to show that the forum–selection clause should not be enforced. Kline clearly consented to a provision that is not unreasonable.[4] Therefore, the forum–selection clause must be enforced.

In order to obviate the need for the plaintiff to file a new action in California, the Court finds that it would be in "the interest of justice," 28 U.S.C. §§ 1404(a) and 1406(a), to transfer the action to the United States District Court for the Central District of California.[5]

Accordingly,

IT IS ORDERED that defendant's motion to dismiss be and hereby is denied.

IT IS FURTHER ORDERED that this action be and hereby is transferred to the United States District Court for the Central District of California.

---

4. Several cases that occurred after *The Bremen* have upheld the validity of forum–selection clauses in cases that pitted not completely unsophisticated individuals or small businesses against large corporations. *See Furbee v. Vantage Press, Inc.*, 464 F.2d 835 (D.C.Cir.1972); *Dick Proctor Imports, Inc. v. Sumitomo Corp. of America*, 486 F.Supp. 815 (E.D.Mo.1980); *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978); *Davis v. Pro Basketball, Inc.*, 381 F.Supp. 1 (S.D.N.Y.

1974). *But see Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.W.Va.1976).

5. 28 U.S.C. § 1404(a) presumes that venue is properly located in the transferring court. 28 U.S.C. § 1404(a) applies when venue is improper. The Court will transfer this case under both provisions (in the alternative), without deciding whether the enforcement of a forum–selection clause is equivalent to a finding of improper venue.