MERCURY COAL & COKE, INC., a West Virginia corporation, Appellee,

v.

MANNESMANN PIPE AND STEEL CORPORATION, a corporation, Appellant.

No. 82–1145.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1982.

Decided Dec. 22, 1982.

William Rand, New York City (Coudert Brothers, New York City, Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, W. Va., on brief), for appellant.

Joseph A. Laurita, Jr., Morgantown, W. Va. (James A. Kent, Jr., Morgantown, W. Va., on brief), for appellee.

Before WIDENER and SPROUSE, Circuit Judges, and BRYAN, Senior Circuit Judge.

ALBERT V. BRYAN, Senior Circuit Judge:

This appeal derives from an injunction issued by the Federal Court for the Northern District of West Virginia in the suit of Mercury Coal and Coke, Inc. (Mercury or seller), of West Virginia, against Mannesmann Pipe and Steel Company (Mannes-

mann or buyer), an international company with its principal American place of business in New York State. The order barred Mannesmann from suing in New York to recover damages for an alleged breach by Mercury of a contract for the purchase of coal by Mannesmann from Mercury.

The determinant issue is the enforceability of the contract provision that any controversy or claim relating to the purchase order or its breach shall be submitted to the Supreme Court of the State of New York for decision, but if the procedure therefor in that Court is not available, then to such other New York Court as is available and, further, the purchase order shall be construed according to the laws of New York.[1] Mannesmann now takes an appeal from the injunction.[2]

We grant the appeal, uphold the clause, and at the same time dissolve the injunction, thus reversing the judgment of the District Court.

The facts are not in question. After negotiations during October 1980 in West Virginia, Mercury and Mannesmann consummated a contract of purchase and sale for more than 300,000 tons of coal. The buyer furnished printed forms for the contract. Each consisted of four pages, two of which were captioned "Purchase Order." The front side of each page displayed pre-printed headings as to product, quantity, penalties, delivery, and price. Wayne Fortney, President of Mercury, testified that he discussed and negotiated each of these terms with Mannesmann. After agreeing upon a term, the parties inserted the apposite material in the space following each heading.

On the reverse side of each page, however, there was printed "General Terms and Conditions of Purchase of Mannesmann Pipe and Steel Corporation." Beneath the title, the form contained a litany of provisions including an "integration clause," a section governing the buyer's remedies, and a clause on means of acceptance. More importantly, to repeat, paragraph 10 (supra fn. 1) stated that all disputes generated by the contract were to be resolved in the courts of New York.

Unlike the terms on the front of the forms, Mr. Fortney testified that he did not negotiate the terms on the reverse sides. He said this omission was caused by his inability to read the small type in which these paragraphs were printed. Although he retained the contract for a week before he signed it, he never obtained a copy with large type nor did he have anyone read the pre-printed conditions to him.

On October 15, 1981, Mercury commenced a diversity action against Mannesmann for breach of contract in the United States District Court for the Northern District of West Virginia.[3] Mannesmann moved to dismiss the suit on the basis of the forum clause. In December, counsel for Mannesmann wrote Mercury stating that Mannesmann intended to institute an action in the New York courts. Mercury then petitioned the Federal District Court in its West Virginia contract action to enjoin Mannesmann from initiating New York litigation. The

---

1. 10. *Governing Laws; Dispute; Notice*

10.1. Any controversy or claim arising out of or relating to this Purchase Order or the breach thereof shall be submitted to the Supreme Court of the State of New York, County of New York, for determination pursuant to the New York Simplified Procedure for Court Determination of Disputes Act, CPLR § 3031, *et. seq.* ("NYSPCDDA"). In the event that at a time such controversy or claim arises, the NYSPCDDA is no longer a part of the law of the State of New York or is otherwise not available for the adjudication of such controversy or claim, then the aggrieved Party shall have recourse in the courts and the other Party hereby waives its rights, if any, to a jury trial.

10.2 The Purchase Order shall be interpreted in accordance with the internal laws of the State of New York, U.S.A., including, without limitation, the Uniform Commercial Code as enacted and in force from time to time in the State of New York, and no presumption shall be deemed to exist in favor of or against either Party as a result of the preparation and/or negotiation of this Purchase Order.

2. 28 U.S.C. §§ 1291 and 1292(a).

3. Mercury alleged that Mannesmann had failed to pay the contract price when due. The dispute concerned the quality of the coal.

District Court, upon ascertaining that defendant Mannesmann had not yet commenced any other proceedings, granted Mercury a preliminary injunction. After a hearing on the issue of forum selection, the Court denied Mannesmann's motion to dismiss. At the same time, it continued the injunction in force indefinitely.

Undoubtedly parties may agree in advance to submit controversies arising out of their contract to the jurisdiction of a given court. *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–316, 84 S.Ct. 411, 414–15, 11 L.Ed.2d 354 (1964); *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502, 507 (4th Cir.1956). If the specification of a particular forum is reasonable, another court should not consider it an affront to its judicial power, but should respect the provision as the responsible expression of the parties' intent. *Furbee v. Vantage Press,* 464 F.2d 835, 836 (D.C.Cir. 1972); *Central Contracting Company v. Maryland Casualty Co.,* 367 F.2d 341, 345 (3d Cir.1966).

In *The Bremen v. Zapata Off-Shore Company,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court confirmed that forum clauses in international contracts are prima facie valid.[4] The party resisting application of a selection clause must demonstrate either that litigation in the agreed forum would be "unreasonable and unjust, or that the clause [is] invalid for fraud or overreaching." 407 U.S. at 15, 92 S.Ct. at 1916; *see also Scherk v. Alberto-Culver Company,* 417 U.S. 506, 518, 94 S.Ct. 2449, 2456, 41 L.Ed.2d 270 (1972). A strong public policy of the forum also might result in invalidation. 407 U.S. at 15, 92 S.Ct. at 1916. Inconvenience to the resisting party constitutes a ground for voiding a clause only if enforcement would effectively deprive that party of his day in court. *Id.* at 18, 92 S.Ct. at 1917.

Since *The Bremen,* other Federal decisions have considered forum selection clauses. *See e.g., Fireman's Fund American Insurance Co. v. Puerto Rican Forwarding Co.,* 492 F.2d 1294 (1st Cir.1974) (upholding the clause). In *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361 (S.D.N.Y.1975), the Court divided the test in *The Bremen* into two alternative prongs. First, the party attempting to thwart the clause may attack the entire contract or the clause as invalid on traditional contract grounds, such as fraud, mistake, coercion, or overreaching. *Id.* at 365. Second, the party may show that the specified forum is so "seriously inconvenient," that he would be deprived of an opportunity to participate in the adjudication. *Id.*

The Federal District Court for the Southern District of West Virginia applied West Virginia law to the issue of forum selection in *Leasewell, Ltd. v. Jake Shelton, Inc.,* 423 F.Supp. 1011 (S.D.W.Va.1976).[5] It held that West Virginia would enforce a "reasonable and just" forum clause in accordance with *The Bremen.* 423 F.Supp. at 1015. The Supreme Court of West Virginia subsequently cited the result in *Leasewell* with approval. *General Electric v. Keyser,* 275 S.E.2d 289, 292 n. 2 (W.Va.1981). The Court also found choice of forum clauses to be sanctioned by statute. *Id.; see* W.Va. Code § 46–1–105(2) (Cum.Supp.1980). The courts of New York also have adopted the principles recognized in *The Bremen. See e.g., Hodom v. Stearns,* 32 App.Div.2d 234, 301 N.Y.S.2d 146 (N.Y. 4th Dept.1969); *Export Insurance Co. v. Mitsui S.S. Co.,* 26 App.Div.2d 436, 274 N.Y.S.2d 977 (N.Y. 1st Dept.1966).

---

4. *Id.* at 10, 92 S.Ct. at 1913; *see also* Restatement (Second) of Conflict of Laws § 80 (1971). The Court declared that this was to be the doctrine followed by Federal district courts sitting in admiralty. 407 U.S. at 10, 92 S.Ct. at 1913.

5. This Court partly disapproved of the Leasewell result in *Hoffman v. National Equipment*

*Rental, Ltd.,* 643 F.2d 987 (4th Cir.1981). *Hoffman* criticized the District Court in Leasewell for not determining if the New York judgment in the latter case was entitled to full faith and credit. 643 F.2d at 989. We further recognized the line of decisions that began with *The Bremen. Id.* at n. 2.

Presently, the District Court rejected the forum clause on the basis of inconvenience to the parties and also because it was not the product of negotiation by two businesses with equivalent bargaining power. However, inconvenience serves as a ground for invalidation only when enforcement would "deprive a party of his day in court." Mercury, however, does not contend that trial of this action in the New York courts will prevent it from adequately litigating its case. Rather, it asserts only that some of its witnesses will be inconvenienced if forced to travel from West Virginia to New York. This allegation neither survives under the test used in *The Bremen* nor does it indicate that compliance with the clause would be unreasonable or unjust. *Id.; Keyser,* 275 S.E.2d at 292 n. 2.

The District Court also concluded that unequal bargaining power between Mercury and Mannesmann rendered the clause invalid. Each party, though, possessed a sophisticated knowledge of the coal industry. Both entered the transaction as coal dealers rather than as producers. In particular, Mercury's president, Fortney, had accumulated almost twenty years of experience as chief executive officer of his company. Although Mannesmann was the more substantial concern, Mercury did not suffer from a dearth of commercial expertise.

Additionally, Mercury avers that the forum choice never became a part of the contract because Fortney was unable to read the clause when he signed. Nonetheless, ignorance due to failure to read is no excuse in West Virginia or New York. *Hoffman v. National Equipment Rental, Ltd.,* 643 F.2d 987, 991 (4th Cir.1981); *see also R.D. Johnson Milling Co. v. Read,* 76 W.Va. 557, 85 S.E. 726 (1915); *Amend v. Hurley,* 293 N.Y. 587, 59 N.E.2d 416 (1944).

For the errors now assigned to the trial court, its injunction is dissolved and this suit remanded to that court with directions to dismiss the action brought by Mercury Coal and Coke, Inc. Both parties are free to pursue their remedies in the courts of New York in accordance with the terms of their agreement.

*Reversed and remanded.*