**Cliff COUCH d/b/a Charwell Development, Plaintiff,**

v.

**FIRST GUARANTY LIMITED, Defendant.**

**Civ. A. No. CA–5–83–153.**

United States District Court, N.D. of Texas, Lubbock Division.

Jan. 20, 1984.

Aubrey J. Fouts, Carr, Evans, Fouts & Hunt, Lubbock, Tex., for plaintiff.

Harold H. Pigg, Brock, Morton & Pigg, Lubbock, Tex., for defendant.

## MEMORANDUM ORDER

WOODWARD, Chief Judge.

Plaintiff Cliff Couch, a Texas resident brought suit in this court alleging breach of contract against First Guaranty Limited, a California corporation. The contract in question, obligating defendant to arrange financing for plaintiff's development, contained a clause fixing venue in the event of litigation in Orange County, California. The defendant filed a Motion to Dismiss for Improper Venue or Alternatively, Motion to Transfer. A hearing was held on the motion, and both parties presented testimony and submitted exhibits into evidence.

For the following reasons, the Motion to Dismiss for Improper Venue or Alternatively, Motion to Transfer is denied.

The sole issue here is whether the contractual venue provision should be enforced. Though the verbal formulation of the law on this issue is established, the application of that law is unclear. In *The Bremen, et al. v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1971), the Supreme Court held (in an admiralty case) that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *Id.* at 10, 92 S.Ct. at 1913. In that case, an American corporation contracted with a German-based corporation to tow a drilling rig from the United States to Italy. The towing contract provided that any disputes would be heard before the London Court of Justice. The Court emphasized the fact that the parties to the agreement—all sophisticated businessmen—consciously chose a neutral forum in the event of disputes, and that such choice was of "overriding importance" to the transaction. *Id.* at 14, 92 S.Ct. 1915. "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." *Id.* at 12, 13, 92 S.Ct. at 1914, 1915. The Court pointed out that there was no allegation of fraud or undue bargaining power; "... this was not simply a forum contract with boilerplate language that Zapata [defendant] had no power to alter." *Id.*, n. 14.

The leading articulation of the *Bremen* stated in this Circuit is Judge Higginbotham's opinion in *Taylor v. Titan Midwest Construction Corp.*, 474 F.Supp. 145 (N.D. Tex.1979). The court, although enforcing the forum clause, restricted its holding by stating:

> ... this court emphasizes, however, that its holding is limited to the situation presented here of a forum-selection provision 1) entered into by corporations of equal bargaining power and unaffected by fraud, overreaching, or any other form of unfairness and 2) reasonable in the sense that its enforcement does not cause great inconvenience to the parties and does not result in the transfer of the case to a forum that is not reasonably related to the lawsuit. It bears emphasis that overweening bargaining power or inequality in bargaining power ought to be carefully watched for. And appearance as "boiler plate" in form contracts is a warning.

474 F.Supp. 145, 149.

In the case before this court, the evidence shows that plaintiff Couch is a carpenter from Plainview, Texas. Temporarily disabled by an injury, plaintiff and his brother put together a plan to build a truckstop and motel in Plainview. With no financial resources of his own, plaintiff sought financing assistance from defendant, after reading an advertisement. Plain-

tiff paid defendant $15,000.00, and signed the contract in question. The contract was one of several agreements that passed between plaintiff and defendant. The defendant prepared the contract, and testified that it was a form contract. At defendant's request, plaintiff initialed certain paragraphs of the agreement, reflecting his understanding of their terms. Plaintiff did *not* initial paragraph number 11 which contained the forum selection clause. Paragraph 11 contains no subheading which indicates it involves the resolution of disputes; the venue clause is in the third sentence; the first sentence deals with assignees and the second deals with parol evidence. The plaintiff did not have assistance of counsel when he executed the contract and testified that he was unaware of the provision and doesn't even know what "venue" means. Plaintiff claims that he had to sign the contract, in hopes of obtaining financing for his project. Plaintiff claims that the contract is the result of fraud, overreaching and misrepresentation.

These facts are within Judge Higginbotham's restriction on the enforcement of forum selection clauses. The clause here is boilerplate, and the parties are not on equal footing. Cases directly on point, however, are nonexistent. No case holds explicitly that inequality of bargaining power *ipso facto* precludes enforcement of a venue clause. Nor, on the other hand, does any case state that an explicit finding of fraud must be made in order to circumvent the terms of the clause. The factors considered by courts do not create a magical formula for deciding the issue. "It should therefore be apparent that a [plaintiff] need not be forced to meet all or even most of the enumerated criteria. Rather, a [plaintiff] need simply to convey to the Court a set of qualitative factual circumstances warranting denial of enforcement." *Kolendo v. Jerell, Inc.*, 489 F.Supp. 983, 985 (S.D.W.Va.1980).

In *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.W.Va.1976), the court refused to enforce a venue provision based on the convenience of parties and witnesses, the inequality of bargaining power, boilerplate language, and the law governing the contract. The court emphasized the inequality of bargaining power, and stated that "In the context, the question is not whether the agreement is, as a matter of law, initiated by the lack of equality, but rather whether justice requires that a distinction be drawn between freely negotiated contracts and standard form contracts, particularly where there is a lack of equality." *Id.* at 1016, *citing Gaskin v. Stumm Handel GmbH*, 390 F.Supp. 361 (S.D.N.Y.1975). The court also noted that since the forum clause was a boilerplate provision, "there is no justification in assuming ... that the provision was knowingly or understandingly bargained for between equals." *Id.* n. 9.

That the provision is knowingly inserted in the contract seems to be the underpinning of the *Bremen* decision, and the antithesis of the situation here. The venue provision was not knowingly bargained for between plaintiff Couch and defendant First Guaranty; rather, it was an obscure clause in a form contract. And, unlike the *Bremen* situation, it was in no way vital or even significant to the transaction. The clause was intended solely for the convenience of the defendant. The fact that a forum clause was in an obscure boilerplate provision, obviously inserted only for the convenience of the defendant, with no indication of having been freely bargained between the parties, was reason for denying enforcement of the clause in *Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905 (E.D. Wis.1981).

In *Kline v. Kawai America Corp.*, 498 F.Supp. 868, 873 (D.Minn.1980), a forum selection clause in a contract between a piano dealer and importer was enforced. The court noted that the provision was boilerplate, but found that consideration balanced by the fact that the plaintiff was a sophisticated businessman, plaintiff refused to sign the contract until his attorney read it, and plaintiff voluntarily renewed the contract without change the next year. The reasoning of the *Kawai* case would warrant a denial of enforcement of the

clause in the case now before the court. Plaintiff did not have an attorney, nor was he a sophisticated or experienced businessman. Further, there was a great disparity in bargaining power, a factor relied upon in nearly all the cases denying enforcement of this forum clause. *See e.g. Kolendo v. Jerell, Inc.*, 489 F.Supp. 983 (S.D.W.Va. 1980); *Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905 (E.D.Wis.1981).

Added to the factor of inequality of bargaining power—arguably determinative in itself—is the allegation here of fraud and overreaching. Plaintiff Couch claims he was virtually at the mercy of the defendant. He had already given defendant $15,-000.00 and wanted help getting his project financed. He had no experience in such matters, and no professional advice. He testified that he was being "put-off" by the defendant, and flew to California to try to get some action taken. The contract in question was then placed before him, and he signed it with no knowledge of the venue provision. Defendant pointed out certain provisions and had plaintiff initial them, but the venue provision was not initialed. Further, it was obscured in the middle of a paragraph. Together with the inequality of bargaining power, lack of expertise of plaintiff and his lack of knowledge of the provision, such indication of overreaching brings this case squarely within the category of cases in which the choice of forum clause should not be enforced.

The Motion of defendant to Dismiss for Improper Venue or Alternatively, Motion to Transfer is therefore denied.

It is so ordered.