**Eli YODER, Plaintiff,**

v.

**HEINOLD COMMODITIES, INC., and C. Peerman Holland, III, Defendants.**

**Civ. A. No. 85–821–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 25, 1986.

Donald J. Clark, Robert J. Haddad, Robert M. Reed, Clark & Stant, P.C., Virginia Beach, Va., for plaintiff.

William T. Prince, Williams, Worrell, Kelly & Greer, Norfolk, Va., Michael Elman, Heinold Commodities, Inc., Chicago, Ill., for Heinold Commodities, Inc.

Arthur C. Ermlich, Ermlich & Radin, Norfolk, Va., for C. Peerman Holland, III.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on the motion of Heinold Commodities, Inc. ("Heinold"), to dismiss this action, or alternatively, to transfer the action to the Northern District of Illinois, or to stay these proceedings pending resolution of the Illinois suit. Briefs have been submitted by Heinold and Yoder and a hearing held on these motions on January 30, 1986. Accordingly, these motions are ripe for disposition.

The relevant factual allegations, as set forth in plaintiff's affidavit, are as follows. The plaintiff, a resident of Virginia Beach, Virginia opened a commodities trading account with C. Peerman Holland, III, a Heinold investment broker, in December of 1981. In order to open the account, plaintiff was told he needed to sign several forms, including a consent to jurisdiction

clause which reads in pertinent part as follows:

> All actions or proceedings arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby shall be litigated at the discretion and election of Heinold Commodities, Inc. ("Heinold") only in courts whose situs is within the State of Illinois...

Plaintiff alleges that he was told by Holland that he needed to sign all the forms but that he "need not worry about their contents because they were just standard forms and that he [Holland] would be personally responsible for all the dealings in my account..." (Affidavit Para. 6).

In the three years that followed the opening of plaintiff's account, the defendants allegedly engaged in an excessive amount of trading on plaintiff's account, generating large commissions for themselves at a substantial loss for the plaintiff. Plaintiff contends that the defendants' actions amounted to "churning" in violation of federal securities laws and regulations, and also constituted actionable fraud, breach of fiduciary duty and breach of contract.

Prior to instituting this action, counsel for plaintiff sent a demand letter to Heinold's in-house counsel setting forth plaintiff's claim and indicating the amount for which plaintiff would settle. Heinold responded four days later by filing a complaint in the Circuit Court of Cook County, Illinois seeking declaratory relief. The Illinois action has since been removed to the United States District Court for the Northern District of Illinois. Approximately ten days after being served with Heinold's Illinois complaint, plaintiff filed this action.

Heinold's motion to dismiss, transfer or stay is based on two grounds. Heinold argues first that plaintiff should be bound by the forum selection clause he signed. Second, Heinold contends that because its declaratory judgment action was filed before this suit was filed, this Court should allow the Illinois suit to proceed to judgment first.

## FORUM SELECTION CLAUSE

Heinold's arguments on the forum selection clause are not new to the Court. In *Maria Embiata v. Heinold Commodities, Inc.* and *Frank S. Mordecai,* No. 84–534–N (E.D.Va. Jan. 3, 1985) (opinion from bench denying motion to dismiss, transfer or stay proceedings), the Court denied Heinold's motion to dismiss or transfer based on the same forum selection clause. The Court concluded that where there is a material difference in the bargaining power of the parties, a forum selection clause should not be enforced. *Id.*

Forum selection clauses have been held valid in certain contexts by both the Supreme Court and the Fourth Circuit Court of Appeals. In the leading case of *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1971) the Court held in an admiralty matter that forum selection clauses are *prima facie* valid and should be enforced unless it can be shown that "enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. The Court's reasoning in *The Bremen* has been held applicable in diversity cases not involving admiralty or international contracts. *E.g. Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315 (4th Cir.1982).

There were a number of factors present in *The Bremen* that led the Court to enforce the forum selection clause. Included among these were the "far from routine" nature of the transaction (it involved the towing of a drilling barge from Louisiana to the Adriatic Sea), 407 U.S. at 13, 92 S.Ct. at 1915, and the sophistication of the parties involved. *Id.* at 12, 92 S.Ct. at 1914. It was apparent that "this was not simply a form contract with boilerplate language that Zapata had no power to alter." *Id.* at 12–13 n. 14, 92 S.Ct. at 1914 n. 14. Also, it was not alleged that fraud or undue bargaining power had anything to do with the inclusion of the forum selection clause in

the contract. In conclusion the Court stated:

> There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations. Under these circumstances, ... [t]he force of an agreement for litigation in this country, freely entered into between two competent parties, seems to me to be very powerful.

*Id.* at 14, 92 S.Ct. at 1915.

Although the Court of Appeals for the Fourth Circuit has upheld forum selection clauses in three cases since *The Bremen* was decided,[1] none of the cases involved material differences in the bargaining power of the parties. Two of these cases involved large, non-routine commercial transactions between sophisticated corporate entities. *Mercury Coal,* 696 F.2d at 318 (contract between coal dealers for the purchase of 300,000 tons of coal); *Bryant Electric Co. v. City of Fredericksburg,* 762 F.2d 1192 (4th Cir.1985) (contract to construct 1.5 million dollar aqueduct). In the third case, a dairy farmer sought to attack the forum selection clause in a livestock lease. *Hoffman v. Nat'l Equipment Rental, Ltd.,* 643 F.2d 987 (4th Cir.1981). The Court found no material difference in bargaining power, noting that the farmer was sufficiently important to be transported by the defendants from West Virginia to Canada to view the livestock. *Id.* at 991.

■ The case at hand bears little resemblence to *The Bremen, Mercury Coal, Bryant Electric,* or *Hoffman.* First, here there is a significant disparity in the bargaining power of the parties. The plaintiff, although not a completely unsophisticated investor, could hardly be said to stand on equal footing with a nationwide brokerage firm. Second, the consent to jurisdiction clause was part of the form or boiler-plate contract given to all the defendant's investors. It was indicated to the plaintiff that the contract's standard clauses, including the forum selection clause, were non-negotiable. Inequality of bargaining power and the use of form contracts are important factors in a court's decision of whether to enforce a forum selection clause. *Couch v. First Guaranty Limited,* 578 F.Supp. 331, 332 (N.D.Texas 1984).

■ Moreover, enforcement of the forum selection clause would greatly inconvenience the parties and witnesses. This was not a multi-state transaction. The defendant broker, Mr. Holland, and the plaintiff both reside in the Eastern District of Virginia, and the contract's signing as well as all the transacting between the parties took place at defendant Heinold's Virginia Beach office. Plaintiff's witnesses and records are located here, and presumably most of the defendants' as well. On the other hand, the designated forum's (Illinois) only connection to the transaction is that it is the location of defendant Heinold's headquarters. It is thus readily apparent that the forum selection clause in Heinold's form brokerage contract was included solely for the convenience of the defendant. *Couch,* 578 F.Supp. at 333; *Cutter v. Scott & Fetzer, Co.,* 510 F.Supp. 905, 907–08 (E.D.Wisc.1981).

The Court is wary of forum selection clauses that appear in form contracts between individuals and large corporations. Routine enforcement of these clauses would undercut the broad reach of a court's personal jurisdiction over corporations that do business in many states. As in the case at hand, where the clause requires the filing of a suit in a distant state it can serve as a large deterrent to the filing of suits by consumers against large corporations.

This is not to say that forum selection clauses should never be upheld in contracts between individuals and corporations

---

**1.** A fourth case, *Union Insurance Society of Canton v. S.S. Elikon,* 642 F.2d 721 (4th Cir.1981), presented the court with the question of the enforceability of forum selection clauses in the specific context of the Carriage of Goods by Sea Act.

where bargaining power is disparate. *Couch,* 578 F.Supp. at 333. The Court need not decide, however, whether to strike down this clause because of the disparity in bargaining power or the inconvenience of the chosen forum because the record at this stage in the proceeding contains evidence of fraudulent, or at least overreaching behavior on the part of the defendants. The uncontroverted affidavit of the plaintiff states that there was no bargaining ever the clauses in Heinold's standard investment contract, and that all indications were that these were not bargainable matters (Para. 6, 7). Further, plaintiff was allegedly told that he "need not worry" about the content of these clauses. (Para. 6). While there may be instances where a forum selection clause can be enforced despite significant differences in the parties' bargaining power, this is certainly not one of them. The Court thus holds that a forum selection clause should not be enforced where a consumer is told by a corporate agent to ignore boilerplate contract language containing a forum selection clause, where there is a material difference in bargaining power, and where the forum designated by the contract has little to do with the transaction and is gravely inconvenient for the parties and witnesses.

EFFECT OF ILLINOIS DECLARATORY
JUDGMENT ACTION ON PROCEED-
INGS IN THIS COURT

As a second grounds for dismissing, transferring, or staying proceedings in this Court, Heinold points to the declaratory judgment action currently pending before the United States District Court for the Northern District of Illinois which was filed a short period before this action was filed. Heinold urges the Court to follow the general rule of allowing the earlier filed suit to proceed to judgment first. *See Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 627 (D.C.Cir. 1975).

Simple solutions to difficult problems are often not possible. Such is the case with the problems presented when separate suits involving the same subject matter are filed in two federal courts. As the Supreme Court has recognized:

> The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature.

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951). An examination of the equitable considerations relevant here leads the Court to maintain jurisdiction over this matter.

Foremost among these equitable considerations are the timing and circumstances surrounding the filing of the declaratory judgment action in Illinois. On November 4, 1985, plaintiff's counsel sent a demand letter to Heinold's in-house counsel setting forth plaintiff's churning claim and stating that if Holland and Heinold did not agree to settle the matter for a specified sum by November 15, 1985, then plaintiff would file suit. On November 8, 1985, Heinold filed a complaint in the Circuit Court of Cook County, Illinois seeking declaratory relief. Shortly after learning of Heinold's declaratory judgment action, plaintiff filed his complaint in this action.

■ It is appropriate for a federal district court to decline jurisdiction over a declaratory judgment action where the declaratory judgment action was filed in apparent anticipation of a suit in another forum. *Mission Insurance Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 (5th Cir.1983); *Ven-Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194, 1195 (11th Cir.1982); *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661, 663 (5th Cir.1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968). Whether the United States District Court for the Northern Dis-

trict of Illinois elects to exercise jurisdiction over Heinold's declaratory judgment action is, of course, a matter within that court's discretion. As far as this Court's decision to retain jurisdiction is concerned, the Court is guided by the decision in *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), where the Court of Appeals upheld the district court's decision not to transfer the action to the forum where an earlier declaratory judgment had been filed.

In *Factors*, the plaintiff threatened to file a lawsuit against the defendant unless the defendant discontinued certain behavior. In response, the defendant filed a declaratory judgment action in the Northern District of Ohio. Five days later the plaintiff filed its suit in the Southern District of New York. The defendant then asked the court to dismiss, stay, or transfer the suit to the Northern District of Ohio. Even though none of the parties, all corporations, were incorporated in or a resident of New York, the Court of Appeals upheld the district court's decision not to transfer. The court stated:

> [Defendant's] suit for declaratory judgment was filed in apparent anticipation of [plaintiff's] New York suit. When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum. [citations omitted] ... [T]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.

*Id.* at 219.

■ There can be little doubt that Heinold's declaratory judgment action was filed in anticipation of the plaintiff bringing suit in the Eastern District of Virginia. This is all the more apparent in light of this Court's decision not to enforce Heinold's forum selection clause in *Embiata*. In this light, Heinold's filing of a declaratory judgment action appears as little more than a tactical maneuver designed to sidestep this court's earlier ruling on its forum selection clause.

A second major factor in this Court's decision not to transfer, dismiss or stay these proceedings is the relative convenience of the forums. *E.g., Amerada*, 381 F.2d at 663. As was stated earlier concerning the forum selection clause, the formation and performance of the contract took place here, and the parties, witnesses and documentary evidence are almost without exception located within this judicial district. Further, the plaintiff has unsuccessfully tried to find counsel in the Chicago area that would be willing to represent him on a contingency basis. In his affidavit, plaintiff states that he is unable to afford the large costs associated with litigating this matter in Illinois. (Para. 10–11).

A third equitable consideration in favor of this Court's maintaining jurisdiction is the fact that all the relevant parties to the contract, plaintiff Yoder and defendants Holland and Heinold, are before the Court here, while the Illinois action engages only the plaintiff and Heinold. *Columbia Plaza*, 525 F.2d at 620, 628. Thus, it cannot be said that the Illinois declaratory judgment action as now constituted completely adjudicates the claims raised in this suit.

A final factor is the relative progress of the two suits. This factor also offers little to support defendant's motion, as both suits appear to be in the very early stages of litigation and the burden is on the defendant to establish that the matter should be transferred or otherwise disposed of. *Factors*, 579 F.2d at 218. Also, the Court does not believe that a distinction can be made between dismissing and staying these proceedings. Heinold argues for the imposition of a stay on the grounds that a stay would promote judicial economy and could be lifted at any point the Court deems appropriate. The Supreme Court, however, has stated strongly that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1982).

In short, concerns of fairness and "wise judicial administration", *Kerotest*, 342 U.S. at 183, 72 S.Ct. at 221, lead this Court to DENY Heinold's motion to dismiss, transfer or even stay these proceedings.

IT IS SO ORDERED.