870 F.2d 654
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Joseph C. BYRD, Joseph H. BYRD, Plaintiffs-Appellees,
v.
INTERNATIONAL TRANSTECH CORPORATION, d/b/a Mr. Transmission,
Defendant- Appellant.
 No. 88-3847.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1988.
Decided March 2, 1989.
 
 William Jefferson Leath, Jr. (Young, Clement, Rivers & Tisdale, on brief) for appellant.
 William Andrew Gowder, Jr. (Andrew K. Epting, Jr., Wise & Cole, P.A., George J. Kefalos, Claypoole, Kefalos, Waggoner & Barrow, on brief) for appellees.
 Before DONALD RUSSELL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The district court refused to enforce a forum selection clause in an agreement between the parties, and the defendant has appealed the denial of his motion to dismiss or to transfer.
 
 
 2
 The agreement for the operation of a "Mr. Transmission" business near Charleston, South Carolina was negotiated and executed in Nashville in the Middle District of Tennessee. The licensing agreement contained a provision that the substantive laws of Tennessee should control, and that venue of any dispute between the parties should be in the Middle District of Tennessee. The district court denied the defendant's motion to dismiss or transfer upon the ground that the plaintiffs alleged fraud or overreaching in the inducement of the contract, and upon the ground of convenience for the plaintiffs in litigating in South Carolina rather than in Tennessee.
 
 
 3
 The plaintiffs seek affirmance of the district court's order here or dismissal of the appeal as premature.
 
 
 4
 We vacate the order of the district court and remand for further consideration of the allegations of fraud. In the face of the forum selection clause, we think the plaintiffs' convenience deserves little further consideration.
 
 I.
 
 5
 A predecessor had operated an automobile transmission repair business near Charleston, South Carolina. The business had been operated under the name "Mr. Transmission" pursuant to a license from the defendant.
 
 
 6
 The plaintiffs, father and son, sought to acquire the business, and they intended to operate as the licensee of the defendant. For that purpose, they withdrew a substantial sum of money that they had saved and traveled to Nashville, Tennessee where they met with representatives of the defendant. They visited several shops in the area and talked with the operators about their profitability.
 
 
 7
 Late on a Friday afternoon, negotiations were concluded with an agreement by the Byrds to purchase the inventory and fixtures of the Charleston store, to acquire a leasehold estate in the realty where the business was operated, and to become a "Mr. Transmission" licensee of the defendant. They made a down payment of $20,000 applicable to the sales price of the inventory and fixtures, as well as a fee of $1,000 for the transfer of the license.
 
 
 8
 After the business failed, the plaintiffs brought this action in the District of South Carolina seeking compensatory and punitive damages upon allegations of fraud in the inducement of the contract. The claim of fraud is premised upon a claim that representatives of the defendant brought undue pressure upon the plaintiffs to sign the papers late that Friday afternoon without affording the plaintiffs an opportunity to study all of the papers more leisurely.
 
 
 9
 It now appears, however, that there was some reason for concluding the negotiations that Friday afternoon. A training class for newly licensed operators was to begin on Saturday morning, the next day. The younger plaintiff entered that class. He would not have been eligible for such training if the agreement had not been concluded.
 
 
 10
 The claim of convenience was premised principally upon the facts that the subject of the action is located in South Carolina, where the plaintiffs resided, that they had lost substantially all of their savings in the unsuccessful venture, and that they could litigate more cheaply in South Carolina than in Tennessee.
 
 II.
 
 11
 Twenty years ago there was a general judicial hostility to the enforcement of forum selection agreements in private contracts. The underlying notion was that a court that had jurisdiction should not be prevented from exercising it by any agreement between the private parties. That approach to the enforcement of venue selection agreements was rejected by the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). Now, the presence of a forum selection clause is "a significant factor that figures centrally in [a judicial decision upon a motion to transfer.]" Stewart Org., Inc. v. Ricoh Corp., 108 S.Ct. 2239, 2244 (1988).
 
 III.
 
 12
 Under the rule of The Bremen, a forum selection clause was so strictly enforced that a court looked to little else when presented with a motion to enforce the clause. It did not matter that one of the parties enjoyed a greater bargaining power, that there had been no bargaining over inclusion of the clause in the contract, or that the objecting parties had been inadvertent or careless in conducting the negotiations. Sterling Forest Assocs., Ltd. v. Barnett-Range Corp., 840 F.2d 249, 251 (4th Cir.1988); Bryant Elec. Co. v. City of Fredericksburg, 762 F.2d 1192, 1196-97 (4th Cir.1985); Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp., 696 F.2d 315, 316-17 (4th Cir.1982); see also Furry v. First Nat'l Monetary Corp., 602 F.Supp. 6, 9 (W.D.Okla.1984).
 
 
 13
 This scene was somewhat altered by the decision of the Supreme Court in Stewart. There, there had been a motion to transfer an action brought under the diversity jurisdiction of the district court. There was a forum selection clause, and the question was whether the law relevant to the motion to transfer was the law of the state that provided the rules governing the substantive rights of the parties or federal law. The Supreme Court decided that federal law controlled the decision on the motion to transfer. The law of the state defining the substantive rights of the parties had nothing to do with it.
 
 
 14
 The Court went on to say, however, that when federal jurisdiction is founded upon diversity of citizenship, the controlling federal rule is supplied by 28 U.S.C.A. Sec. 1404(a) (West 1976). The statute provides for transfers in furtherance of the convenience of parties and witnesses and in the interest of justice. The presence of the forum selection agreement is not to be forgotten, however, for it remains "a significant factor that figures centrally in the District Court's calculus." 108 S.Ct. at 2244.
 
 IV.
 
 15
 We think the district court mistakenly treated the convenience of the plaintiffs and their witnesses as controlling. The answer no longer turns on a balancing of the convenience of parties and witnesses. If the strict rule of The Bremen is not controlling, the court's attention is not to be lightly diverted from the presence and enforcement of the forum selection clause. Of course, it is more convenient for the plaintiffs and their witnesses to have the litigation conducted in South Carolina, but the plaintiffs are not entitled to insist upon their preferences in the face of the forum selection clause providing for the Middle District of Tennessee as the place of trial.
 
 V.
 
 16
 Of course, a forum selection clause is unenforceable by one who obtained it by fraud. See The Bremen, supra. The party claiming fraud, however, has the burden of proving it clearly and convincingly.
 
 
 17
 At the time the district court denied the motion to dismiss or transfer, it had before it only an affidavit signed by the elder Byrd. There was a generalized allegation of fraud in the affidavit, but the process of weighing its generalized allegation would have been assisted if the trial court had solicited more detail. Some such detail is contained in the deposition of the elder Byrd taken after his affidavit had been signed and filed. Depositions or other testimony by representatives of the defendant would also have been enlightening. In short, we think the defendant's motion to dismiss or transfer should have been granted, with leave to the parties to submit more credible proof bearing upon the issue of fraud.
 
 VI.
 
 18
 Since this matter is to be remanded to the district court for further consideration in the light of available proof going to the question of fraud, the parties should also have leave to submit additional proof going to the convenience of the parties. After Stewart, however, consideration of the convenience for parties and witnesses must reflect the presence of a forum selection clause. Preferences should not be found persuasive, but a claim of the impossibility of conducting the litigation in the Middle District of Tennessee would deserve a hearing if there is credible evidentiary support for it.
 
 VII.
 
 19
 The Byrds also contend that the appeal in this case is premature. The contention runs counter to our holding in Sterling Forest.
 
 
 20
 That decision is not modified by the holding of the Supreme Court in Gulfstream Aerospace Corp. v. Mayacamas Corp., 108 S.Ct. 1133 (1988). Gulfstream had nothing to do with forum selection clauses, and our rule as expressed in Sterling Forest remains in effect. See Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 908 (3d Cir.1988).
 
 VIII.
 
 21
 This case will be remanded to the district court for further consideration in light of this opinion.
 
 
 22
 REVERSED IN PART;
 
 
 23
 AFFIRMED IN PART;
 
 
 24
 AND REMANDED.