AC CONTROLS COMPANY,
INC., Plaintiff,

v.

POMEROY COMPUTER RE-
SOURCES, INC., Oracle Cor-
poration Defendants.

No. 3:03CV302.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Sept. 29, 2003.

Christopher A. Hicks, Richard L. Farley, KMZ Rosenman, Charlotte, NC, for plaintiff.

James C. Smith, McGuireWoods, LLP, Allan W. Singer, Mitchell, Rallings & Tissue, Charlotte, NC, for defendants.

1. Pomeroy Computer Resources, Inc., is the successor in interest to the Ballantyne Con-

## ORDER

MULLEN, Chief Judge.

THIS MATTER is before the court on Defendant's 18 July 2003 "Motion to Dismiss, or in the alternative, Motion to Sever and Transfer." On 25 August 2003, Plaintiff filed a Response. On 15 September 2003, Defendant filed a Reply. Therefore, the Matter is ripe for consideration, and the Court is prepared to rule on the Motion.

Having carefully considered the parties' contentions, the record, and applicable authority, the undersigned will GRANT Defendant's Motion to Sever and Transfer.

I. FACTUAL INTRODUCTION

On 31 August 2001, Plaintiff, AC Controls Company Inc. ("ACC"), a North Carolina corporation, placed an order ("Ordering Document") to purchase an eBusiness Suite of software from Defendant, Oracle Corporation ("Oracle"), a Delaware corporation with its principal place of business in California. The Ordering Document expressly provided that its terms were governed by the Oracle License and Services Agreement ("License Agreement"). The License Agreement contains a choice of law and forum selection clause providing:

> This agreement is governed by the substantive and procedural laws of California and [ACC] and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts in California in any dispute relating to this agreement.

On 30 August 2001, ACC entered into a Consultant Services Agreement ("Consultant Agreement") with the Ballantyne Consulting Group, Inc. ("Ballantyne").[1]

sulting Group, Inc.

The Consultant Agreement provided, in pertinent part, that Ballantyne would provide ACC with consulting services to implement the software ACC acquired from Oracle pursuant to the Ordering Document and License Agreement. The Consultant Agreement contained a North Carolina choice of law and forum selection clause.

On 9 June 2003, ACC filed a Complaint in the Western District of North Carolina, pursuant to 28 U.S.C. § 1332, alleging: (1) breach of contract by Pomeroy; (2) fraudulent and/or negligent misrepresentation by Pomeroy and Oracle for failing to reveal "important and material facts regarding the eBusiness Suite software;" (3) unfair and deceptive trade practices by Pomeroy and Oracle; and (4) breach of warranty by Oracle. On 18 July 2003, Oracle filed a "Motion to Dismiss, or in the alternative, Motion to Sever and Transfer."

## II. DISMISSAL UNDER 28 U.S.C. § 1406(A) AND FED. R. CIV. P. 12(B)(3)

Where an action is filed in the wrong venue, the district court shall, pursuant to 28 U.S.C. § 1406(a), "dismiss [such action], or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." According to Oracle, the forum selection clause of the License Agreement makes venue in the Western District of North Carolina improper, and, therefore, requires this Court to dismiss the action under Fed. R. Civ. Pro. 12(b)(3). The Court disagrees.

■ Under 28 U.S.C. § 1406(a), "the presence of a forum selection clause does not, in and of itself, make venue improper." *Southern Distributing Co., Inc. v. E. & J. Gallo Winery,* 718 F.Supp. 1264, 1267 (W.D.N.C.1989). *Cf. Stewart Organiza-*

*tion, Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 n. 8, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Instead, where a motion to dismiss is filed pursuant to Section 1406(a) and Fed. R.Civ.P. 12(b)(3) the Court must look to 28 U.S.C. § 1391. As Judge Bullock has noted, "[t]he rationale for this rule appears to be that dismissal for improper venue under Rule 12(b)(3) depends on whether the requirements of venue as set out in Section 1391 are met .... [and] Section 1391 does not call for courts to consider the parties' private contractual agreements when determining if venue is proper." *Scotland Memorial Hosp., Inc. v. Integrated Informatics, Inc.,* 2003 WL 151852, *1 (M.D.N.C.2003).

■ Here, venue is proper under 28 U.S.C. § 1391. For the purposes of a motion to dismiss, allegation in the complaint must be treated as true. *GE Investment Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001). According to allegations in the Complaint, the parties are diverse, the amount in controversy exceeds $75,000, and a substantial part of the events giving rise to this dispute occurred in Charlotte, North Carolina. Accordingly, venue is the Western District of North Carolina is proper. *See* 28 U.S.C. § 1391(a)(2). As venue is proper pursuant to Section 1391, the Court will deny Oracle's motion to dismiss under 28 U.S.C. § 1406(a) and Fed.R.Civ.P. 12(b)(3).

## III. TRANSFER UNDER 28 U.S.C. § 1404(A)

■ Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, ... transfer any civil action to any other district or division where it might have been brought."[2] In *Stewart,* the Su-

---

2. The parties do not dispute that this action could have been brought in the Northern District of California. After reviewing the record, particularly the allegations in the Complaint, the Court agrees. *See* 28 U.S.C. § 1391(a)(1).

preme Court noted that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness' .... [which] calls on the district court to weigh [and] balance a number of case-specific factors." *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239 (citation omitted). However, "[b]efore the 'case-specific factors' are balanced under § 1404(a), the Court must first determine whether the forum-selection clause [if any] is valid under federal law, and therefore is able to be considered as a factor under § 1404(a)." *Republic Mortg. Ins. Co. v. Brightware, Inc.*, 35 F.Supp.2d 482, 484 (M.D.N.C. 1999).

### A. IS THE FORUM SELECTION CLAUSE ENFORCEABLE?

■ It is well settled that forum selection clauses are presumptively valid. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.1996). However, "the presumption of [validity] that forum selection ... provisions enjoy is not absolute, [rather such provisions] may be overcome by a clear showing that they are 'unreasonable under the circumstances.'" *Allen*, 94 F.3d at 928 (citing *The Bremen*, 407 U.S. at 10, 92 S.Ct. 1907).[3] In *Allen*, the Fourth Circuit explained that choice of forum "provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the

grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen*, 94 F.3d at 928 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) and *The Bremen*, 407 U.S. at 12–13, 92 S.Ct. 1907).

■ First, ACC argues the forum selection clause is unreasonable under the circumstances because it is the result of "an overreaching business practice of Oracle." According to ACC, Oracle used its superior bargaining position to insert boilerplate language into the License Agreement. *See, e.g., Yoder v. Heinold Commodities, Inc.*, 630 F.Supp. 756, 760 (E.D.Va.1986) (holding "that a forum selection clause should not be enforced where a consumer is told by a corporate agent to ignore boilerplate contract language containing a forum selection clause, where there is a material difference in bargaining power, and where the forum designated by the contract has little to do with the transaction and is gravely inconvenient for the parties and witnesses"). *But see, e.g., Carnival Cruise Lines*, 499 U.S. at 593–94, 111 S.Ct. 1522 (holding that non-negotiated forum selection clause in a cruise ticket was enforceable and reasonable because: (1) "a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit;" (2) "a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in

---

**3.** The parties do not dispute that the forum selection clause, if valid, is mandatory. The Court, after reviewing the applicable law and the forum selection clause, agrees. *See, e.g., Scotland Memorial*, 2003 WL 151852, *4 (noting that "when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection

clause without some further language that indicates the parties' intent to make jurisdiction exclusive such as 'exclusive,' 'sole,' or 'only'") (citation omitted). Here, the forum selection clause submits any disputes to "the exclusive jurisdiction of, and venue in, the courts [of] California."

several different fora;" (3) "a [forum selection] clause ... has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions;" and (4) because "passengers who purchase tickets containing a forum clause ... benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued").

Relying on *Yoder*, ACC contends Oracle had superior bargaining power, and, therefore, the forum selection clause was the product of an adhesion contract. However, the evidence in the record demonstrates that ACC negotiated and succeeded in modifying certain terms in the same document that contained the forum selection clause. For instance, the last section of the Ordering Document provides:

> MODIFICATIONS TO THE AGREEMENT—The following terms amend the attached Oracle License and Services Agreement:
>
> 1. *Licensing Rules:* On page 6 of 7 of the agreement, the user minimum table located in the section entitled, "Licensing Rules" is hereby amended by deleting the second row (Oracle Standard Edition/10 named Users per Processor).

ACC "cannot now avoid a provision of a freely-entered contract because it did not consider the provision carefully at the time the Agreement[ was] negotiated. Despite [ACC's] implication to the contrary, the Agreement[ ][was] far from an adhesion contract in which these provisions were forced upon an unsuspecting consumer. Rather, these Agreements were negotiated

between two sophisticated business entities." *Republic Mortg. Ins.*, 35 F.Supp.2d at 484.[4] Accordingly, the Court finds that the forum selection clause was not the result of an overreaching business practice of Oracle.

▪ Second, ACC argues the forum selection clause is unreasonable under the circumstances because of "the unavailability of compulsory process for [the] attendance of witnesses and the vast cost of pursuing two separate suits involving the same facts and witnesses, for all practical purposes, deprive[s] ACC of its day in court." The party challenging a forum selection clause on the basis of inconvenience must demonstrate "that the specified forum is so 'seriously inconvenient,' that he would be deprived of an opportunity to participate in the adjudication." *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir. 1982). Here, ACC has submitted the affidavit of Mr. James R. Borders, the President of ACC, which provides that: (1) all of the necessary witnesses, for both parties, live in the Charlotte vicinity; and (2) enforcing the forum selection clause, which would require ACC to bring separate suits in California and North Carolina, will have the practical effect of prohibiting ACC from "pursing its claims against Oracle because of the 'massive travel expenses'" and the extra expense of hiring California trial counsel.

However, in a diversity case, whichever forum is ultimately selected will inevitably burden "one side or the other" by requiring them to "bring[ ] themselves and their witnesses from [another state]." *Republic Mortgage Ins.*, 35 F.Supp.2d at 487 (quoting *Brock v. Entre Computer Ctrs., Inc.*,

---

**4.** Furthermore, ACC's reliance on *Yoder* seems misplaced. In *Carnival Cruise,* the Supreme Court made it eminently clear that disparities in bargaining position are legally insufficient to invalidate an otherwise reasonable forum selection clause. *See Carnival Cruise,* 499 U.S. at 593–94, 111 S.Ct. 1522.

933 F.2d 1253, 1258 (4th Cir.1991)). Although ACC has alleged enforcement of the forum selection clause will be expensive, ACC has not satisfactorily alleged that such enforcement will deprive ACC of an opportunity to participate in adjudicating the matter. Moreover, any inconvenience ACC might suffer as a result of being forced to litigate one case in California and one in North Carolina "was clearly foreseeable at the time of contracting." *The Bremen,* 407 U.S. at 17–18, 92 S.Ct. 1907. As noted, ACC succeeded in negotiating certain terms in the Licensing Agreement, and ACC "cannot now avoid a provision of a freely-entered contract because it did not consider the provision carefully at the time the Agreement[ was] negotiated." *Republic Mortg. Ins.,* 35 F.Supp.2d at 484. Accordingly, the Court finds that ACC has failed to meet the heavy burden of demonstrating that the forum selection clause should be invalidated on the basis of serious inconvenience.

■ Third, and finally, ACC argues the forum selection clause is unreasonable, under the circumstances, because it contravenes North Carolina's strong public policy. Pursuant to N.C. Gen.Stat. § 22B–3, "any provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." In the instant litigation, the License Agreement was entered into in Atlanta, Georgia. Accordingly, on its face, N.C. Gen.Stat. § 22B–3 does not

apply to the present action.[5] Furthermore, and in the alternative, in *Republic Mortgage* the Middle District squarely addressed this question. Although the Court noted North Carolina's interest in the litigation, the Court found that "California's interest . . . must be considered, and it likely has an interest in a dispute in which a corporation that has its principal place of business in California allegedly is not paid for its services." *Republic Mortg. Ins.,* 35 F.Supp.2d at 486. Here, Oracle is a Delaware corporation with its principal place of business in California. Therefore, California has an significant interest in the ACC's claims that Oracle is liable for damages. Based on the foregoing, the Court finds that the forum selection clause does not contravene North Carolina's strong public policy.

**B. 28 U.S.C. § 1404(A) EVALUATIVE TEST**

As noted, in considering a motion to transfer under 28 U.S.C. § 1404(a), this Court must evaluate a number of factors. These factors include:

1. The plaintiff's choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

---

5. In a vain attempt to apply Section 22B–3 to the instant litigation, ACC argues, and submits an affidavit in support, that "Oracle deliberately conducts its business in such a way as to avoid North Carolina's policy . . . . [For instance,] [w]hile all evaluations, discussions, marketing, sale, and the attempted implementation of the [Agreement] took place in Charlotte, the countersigned copy of the License Agreement was returned to ACC from Ora-

cle's Atlanta, Georgia Office." According to ACC, "[t]his was an obvious effort [by Oracle] to have the License Agreement deemed to have been 'enter into' outside of North Carolina . . . ." ACC's allegations, however, are irrelevant. Oracle has an interest, and a right, to hire sophisticated legal counsel to pursue its aim of having contractual disputes litigated in California.

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

*Rice v. Bellsouth Advertising & Pub. Corp.*, 240 F.Supp.2d 526, 529 (W.D.N.C. 2002). "A court should analyze each of these factors both quantitatively and qualitatively." *Id.* (Citing *McDevitt & Street Co. v. Fidelity & Deposit Co. of Md.*, 737 F.Supp. 351, 354 (W.D.N.C.1990)).[6]

### 1. THE PLAINTIFF'S CHOICE OF FORUM

■ "A plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed." *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F.Supp. 446, 451 (W.D.N.C.1989) (citations omitted). Seemingly, this first factor would favor retention in North Carolina, because ACC originally filed this action in North Carolina. However, as the Supreme Court noted in *Stewart*, these factors must be viewed with reference to "the parties' expressed preference ... in light of the forum-selection clause." *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239. "When a forum-selection clause is part of the balancing, as *Stewart* requires, it is more logical to consider the plaintiff's initial

choice of forum to be the forum that is contractually agreed upon." *Republic Mortg. Ins. Co.*, 35 F.Supp.2d at 486. The Eleventh Circuit echoed this sentiment in holding that:

[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered. In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). Accordingly, having determined the forum selection clause is valid, this factor *heavily* weighs in favor of transferring venue to California.

### 2. THE RESIDENCE OF THE PARTIES

ACC is based in North Carolina. Pomeroy, the successor in interest to the Ballantyne, is based in Kentucky. Oracle is based in California. Despite ACC's arguments to the contrary, the Court finds this factor is neutral.

### 3 & 4. LOCATION OF WITNESSES AND EASE OF PROOF

The majority of the witnesses identified by ACC and Oracle live in the Southeast-

---

**6.** Seemingly, as the parties have failed to brief factors 5, 6, and 11, the parties agree that these factors neither favor nor disfavor transfer of venue. After reviewing these factors, the Court agrees and, accordingly, finds that these factors are neutral.

ern United States. Oracle has identified a few witnesses who live in California, Massachusetts, and New York. As noted in *Brock*, "no matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from [another state]." *Brock*, 933 F.2d at 1258. The Court finds that this factor slightly favors retention.

### 7. RELATIVE ADVANTAGES AND OBSTACLES TO A FAIR TRIAL

ACC argues Oracle will have a "home field advantage" in California. However, the same "home field advantage" would likely apply to ACC if venue is found in North Carolina. Accordingly, the Court finds that this factor is neutral.

### 8. OTHER PRACTICAL PROBLEMS: AN EASY, EXPEDITIOUS, AND INEXPENSIVE TRIAL

ACC argues its claims against Oracle and Pomeroy arise from the same nucleus of operative facts. Accordingly, transferring venue will require a duplication of resources which will add to the expense, length, and difficulty of the litigation. Oracle, on the other hand, argues ACC overstates the overlap, and, furthermore, that ACC is well aware that it executed one contract with Oracle with a California forum selection clause and one contract with Pomeroy with a North Carolina forum selection clause. Oracle contends ACC should not benefit from its decision to freely enter into two contracts with mutually exclusive forum selection clauses. After reviewing ACC's complaint, the Court find this factor slightly favors retention.

### 9. THE ADMINISTRATIVE DIFFICULTIES OF COURT CONGESTION

ACC has submitted a Judicial Caseload Profile for the Western District of North Carolina and the Northern District of California. The Profile reveals that in 2002 the Western District of North Carolina had significantly less filings per judge.

However, the Profile also reveals that the median months from filing to disposition is similar (9.1 Months in the W.D. N.C. and 9.5 Months in the N.D. Ca.). Accordingly, the Court finds that this factor slightly favors retention.

### 10. THE INTEREST IN HAVING LOCALIZED CONTROVERSIES SETTLED AT HOME AND THE APPROPRIATENESS IN HAVING THE TRIAL OF A DIVERSITY CASE IN A FORUM THAT IS AT HOME WITH THE STATE LAW THAT MUST GOVERN THE ACTION

ACC argues that North Carolina has the prevailing interest in this action because "all transactions and occurrences giving rise to this suit to place in Charlotte, North Carolina." However, the License Agreement, which included a valid forum selection clause, expressed Oracle's desire, a California based corporation, to have a California court resolve any disputes arising from the agreement. Furthermore, the License Agreement expressly provided, and ACC agreed, that California substantive law would apply. As the Middle District noted in *Republic Mortgage*, "[a] district court in California certainly would have more experience and expertise in applying California contract law than this Court." *Republic Mortg. Ins. Co.*, 35 F.Supp.2d at 486. The Court finds this factor slightly favors transferring venue to California.

### C. CONCLUSION

■■■ Having conducted the evaluative test required under 28 U.S.C. § 1404(a), the Court finds that the factors favor transferring venue to California because ACC's "evidence of inconvenience is insufficiently strong to 'overcome the counterweight of the parties' private expression of their venue preference." *Scotland Memorial*, 2003 WL 151852, *6 (citation omit-

ted). "The presence of a valid forum-selection clause ... causes the burden to shift from the party seeking transfer (and enforcement of the clause) to the party opposing enforcement of the clause." *Id.; see also Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1278 (S.D.N.Y.1992) (holding that "once a mandatory choice of forum clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be relieved from his contractual duty"). ACC "has failed to persuade the court that it should not enforce the forum-selection clause to which it agreed to be bound." *Scotland Memorial,* 2003 WL 151852, *6 (citing *In re Ricoh Corp.,* 870 F.2d at 573–74). Accordingly, pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 21, the Court finds that justice, as well as the convenience of the parties, will be served by severing Oracle from the present action and transferring venue to the Northern District of California.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, pursuant to 28 U.S.C. § 1406(a), is DENIED. IT IS FURTHER ORDERED that Defendant's Motion to Transfer, pursuant to 28 U.S.C. § 1404(a), to the Northern District of California is GRANTED, and Defendant's Motion to Sever pursuant to Fed. R.Civ.P. 21 is GRANTED. The Clerk shall forward the record in this case to the United States District Court for the Northern District of California.